[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Rue*, Slip Opinion No. 2020-Ohio-6706.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-6706

THE STATE OF OHIO, APPELLANT, *v*. RUE, APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Rue*, Slip Opinion No. 2020-Ohio-6706.]**

*Criminal law—Community-control sanctions—R.C. 2929.15(A)(1)—Tolling based on absconding—In order for an offender's community-control term to be tolled based on absconding, the state must initiate revocation proceedings prior to the expiration date of the offender's original community-control term—Judgment affirmed.*

(Nos. 2019-0897 and 2019-1128—Submitted June 16, 2020—Decided December 17, 2020.)

APPEAL from and CERTIFIED by the Court of Appeals for Trumbull County, No. 2018-T-0092, 2019-Ohio-1720.

_____

**DONNELLY, J.**

{¶ 1} R.C. 2929.15(A)(1) provides that a court "may directly impose a sentence that consists of one or more community control sanctions" when

sentencing an offender for a felony that does not require the imposition of a prison term, a mandatory prison term, or a term of life imprisonment. "The duration of all community control sanctions imposed upon an offender * * * shall not exceed five years." *Id.*

{¶ 2} In this case, the trial court imposed the maximum five-year community-control sentence on appellee, Lamont M. Rue, on June 5, 2012. Rue's community-control sentence was therefore due to expire on June 5, 2017. The trial court revoked Rue's community control on September 12, 2018, and ordered him to serve a two-year prison term. The issue before us is whether the trial court had the authority to do so.

{¶ 3} Rue maintains, and the Eleventh District Court of Appeals held, that the trial court did not have the authority to conduct those proceedings because notice of the violations and commencement of the revocation proceedings did not occur before the expiration of Rue's community-control term. The state argues that the trial court did have the authority to conduct those proceedings because Rue's failure to report to his probation officer constituted "absconding," which the state claims automatically tolled the running of Rue's community-control term until he was brought before the court. For the reasons that follow, we conclude that the trial court lacked the authority to conduct these community-control-revocation proceedings and therefore affirm the judgment of the court of appeals.

## FACTS AND PROCEDURAL HISTORY

{¶ 4} In May 2012, Rue entered a plea of guilty to burglary, a second-degree felony. *See* R.C. 2911.12(A)(2); R.C. 2911.12(D). On June 5, 2012, the trial court filed its entry sentencing Rue to the maximum of five years of community control pursuant to R.C. 2929.15(A)(1). The payment of restitution was one of the

conditions imposed. Rue's community control was therefore due to expire on June 5, 2017.[1]

{¶ 5} Rue stopped reporting to probation on November 3, 2016. On March 9, 2017, a warrant for his arrest was issued, and he was brought before the sentencing court for a probation-violation hearing on April 20, 2017. The trial court's April 27, 2017 judgment entry found that Rue had violated his community control but did not identify the specific violation or violations. The court ordered Rue to continue on community control and make full restitution by monthly payments, with supervision to continue until restitution was paid in full. The court's entry did not indicate when Rue's community-control term would expire or whether or for how long his community control may have ceased to run, that is, whether it was "tolled," for any lawful reason.

{¶ 6} Rue again stopped reporting to probation on June 20, 2017. On December 18, 2017, a warrant for his arrest was issued. He was arrested on July 17, 2018, and on August 23, 2018, was brought before the court for a probation-violation hearing.

{¶ 7} Rejecting Rue's claim that it lacked jurisdiction because the proceedings were not brought prior to the expiration of the five-year community-control period, the trial court ruled that Rue's community control had been "continued" because he failed to pay restitution and also "as a sanction for multiple violations before." The court's order, journalized on September 12, 2018, again did not identify any period of time that Rue's community control was tolled. The trial court terminated Rue's community control and sentenced him to a two-year

---

1. Although acknowledging that the sentencing entry was filed with the clerk of court on June 5, 2012, the state says that because Rue was sentenced on May 24, 2012, his five-year community-control term was due to expire on May 24, 2017. Mindful that a court speaks only through its journal, however, we find that June 5, 2012 was the operative date for the commencement of Rue's community-control sentence. *See State v. Hatfield*, 2d Dist. Champaign No. 2006 CA 16, 2006-Ohio-7090, ¶ 9 (community control began with filing of judgment entry).

term of incarceration. Rue then appealed the trial court's decision revoking his community control and imposing a two-year sentence.

{¶ 8} The Eleventh District Court of Appeals reversed the judgment, holding that the trial court lacked jurisdiction to conduct proceedings for the second probation violation, because those proceedings were not initiated until after Rue's community-control term expired. 2019-Ohio-1720, 136 N.E.3d 1, ¶ 37.

{¶ 9} Finding its judgment to be in conflict with the judgment of the Ninth District Court of Appeals in *State v. Meyer*, 2014-Ohio-3705, 18 N.E.3d 805 (9th Dist.), the Eleventh District certified the following issue for our review and final determination:

> Does a trial court retain jurisdiction to determine if tolling based on absconding under R.C. 2929.15(A)(1) has occurred when community control revocation proceedings are not initiated until after the specified community control term expires?

{¶ 10} The state separately filed a discretionary appeal that presented the following proposition of law:

> When a criminal defendant absconds during the term of community control, the period of community control sanctions is tolled automatically, and a trial court does not err by imposing a two-year prison term for violations outside the initial five-year period in consideration of the tolling events.

{¶ 11} We determined that a conflict existed and ordered the parties to brief the issue certified by the Eleventh District. 157 Ohio St.3d 1482, 2019-Ohio-4474, 134 N.E.3d 198. We additionally accepted the state's discretionary appeal and

4

consolidated the two cases for review. 157 Ohio St.3d 1482, 2019-Ohio-4474, 134 N.E.3d 200. We answer the certified issue in the negative and decline to adopt the state's proposition of law.

## ANALYSIS

### *Jurisdiction v. Authority*

{¶ 12} Before we address the merits of the parties' respective contentions, we feel obligated to address briefly the subject of "jurisdiction," as it has been posited by both the certified-conflict question and the state's discretionary appeal. As we know, "jurisdiction" is " ' "a word of many, too many, meanings." ' " *Ohio High School Athletic Assn. v. Ruehlman,* 157 Ohio St.3d 296, 2019-Ohio-2845, 136 N.E.3d 436, ¶ 11, quoting *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 90, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), quoting *United States v. Vanness*, 85 F.3d 661, 663 (D.C.Cir.1996), fn. 2.

{¶ 13} Jurisdiction fundamentally concerns a court's constitutional or statutory power to adjudicate a case and "encompasses jurisdiction over the subject matter and over the person." *Pratts v. Hurley,* 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 11. The term "jurisdiction" is also used when referring to a court's exercise of its judicial power in a particular case, *id*. at ¶ 12, and it " ' "encompasses the trial court's authority to determine a specific case * * * that is within its subject matter jurisdiction," ' " *id.*, quoting *State v. Parker*, 95 Ohio St.3d 524, 2002-Ohio-2833, 769 N.E.2d 846, ¶ 22 (Cook, J., dissenting), quoting *State v. Swiger*, 125 Ohio App.3d 456, 462, 708 N.E.3d 1033 (9th Dist.1998).

{¶ 14} Most recently, in *State v. Harper*, ___ Ohio St.3d ___, 2020-Ohio-2913, ___ N.E.3d ___, we reexamined our conflicting precedents concerning void and voidable judgments in criminal cases and held that so long as the sentencing court had jurisdiction over the subject matter of the case and the defendant, any error in the court's exercise of its judicial power would render the judgment voidable upon appellate review. *Id*. at ¶ 26, 42; *see also State ex rel. Pizza v.*

*Rayford,* 62 Ohio St.3d 382, 384, 582 N.E.2d 992 (1992), quoting *Sheldon's Lessee v. Newton,* 3 Ohio St. 494, 499 (1854) ("Once a tribunal has jurisdiction over both the subject matter of an action and the parties to it, * * * 'the right to hear and determine is perfect; and the decision of every question thereafter arising is but the exercise of the jurisdiction thus conferred * * *' " [ellipses added in *Pizza*]); *Pratts* at ¶ 12.

{¶ 15} In the matter at hand, there is no doubt that the court of common pleas had subject-matter jurisdiction over Rue's felony case. *See Harper* at ¶ 24-25. To the extent this dispute concerns actions taken by the trial court in the exercise of its judicial power, this case does not truly concern the trial court's *jurisdiction*; more precisely, it concerns the trial court's *authority* to conduct the community-control-revocation proceedings.

{¶ 16} We fully acknowledge that this court has indicated in prior decisions that a common pleas court lacked "jurisdiction" to revoke a defendant's probation and impose sentence because the defendant's probationary period had already expired. *See Davis v. Wolfe,* 92 Ohio St.3d 549, 552, 751 N.E.2d 1051 (2001) (applying former R.C. 2951.09); *State v. Yates*, 58 Ohio St.3d 78, 79-80, 567 N.E.2d 1306 (1991). Former R.C. 2951.09, Am.Sub.S.B. No. 258, 143 Ohio Laws, Part I, 1308, 1481, in fact provided: "At the end or termination of the period of probation, the jurisdiction of the judge or magistrate to impose sentence ceases and the defendant shall be discharged." But R.C. 2951.09 was repealed, effective January 1, 2004, *see* Am.Sub.H.B. No. 490, 149 Ohio Laws, Part V, 9484, 9485 ("H.B. 490"), and its terms do not appear to have been incorporated into any other provision of the Ohio Revised Code. Regardless of the nomenclature that may have been used previously in those or other cases, and in the interest of judicial precision, we now understand those cases more accurately to concern the court's *authority* to conduct the proceedings, not its *jurisdiction* to conduct the proceedings.

{¶ 17} For purposes of this case, then, the issue we decide is not whether the trial court had jurisdiction to conduct these community-control-revocation proceedings but, rather, whether the trial court had the authority to conduct those proceedings. With that clarification in place, we now proceed to consider the merits of the issues presented.

*Timely Initiation of Revocation Proceedings*

{¶ 18} Our prior decisions recognize that a trial court is "authorized to conduct proceedings on the alleged community-control violations even though they were conducted after the expiration of the term of community control, provided that the notice of violations was properly given and the revocation proceedings were commenced before the expiration." *State ex rel. Hemsley v. Unruh*, 128 Ohio St.3d 307, 2011-Ohio-226, 943 N.E.2d 1014, ¶ 13; *see also State ex rel. Untied v. Ellwood*, 131 Ohio St.3d 37, 2011-Ohio-6343, 959 N.E.2d 1048, ¶ 2 (charge for violating community control was filed before community control expired). *Compare Yates,* 58 Ohio St.3d at 79-80, 567 N.E.2d 1306 (because the state failed to initiate probation-violation proceedings before the defendant's probation term expired, the trial court lacked jurisdiction to declare defendant an absconder and find him guilty of violating the terms of his probation).

{¶ 19} In *Hemsley*, the trial court granted Hemsley's motion for judicial release and placed him on community control for three years in March 2005. *Id*. at ¶ 3. On March 4, 2008, the trial court extended Hemsley's community-control term by an additional two years. *Id*. at ¶ 4. When the trial court learned in January 2010 that Hemsley had traveled to Mexico without the permission of the sentencing judge or the supervising probation officers, the trial court notified Hemsley by letter, dated January 13, 2010, that he would be arraigned on January 28, 2010, for alleged violations of community control. *Id*. Hemsley pleaded not guilty and the matter was set for hearing on April 22, 2010. *Id*. Acknowledging the trial court's authority to conduct those proceedings, we stated, "Here, the charge of violating

community control was filed and the proceeding on the charges commenced before Hemsley's community control expired in March 2010." *Id*. at ¶ 13.

{¶ 20} Although we are not aware of any statute or rule that requires a community-control termination date to be set forth formally in an official court record, it appears from this record that Rue's five-year community-control term was set to expire on June 5, 2017. Any revocation proceedings initiated after that expiration date would seemingly be too late unless some other circumstance intervened to render that apparent expiration date inoperative.

{¶ 21} The question, then, is whether anything intervened in Rue's case to extend the term of his community control so as to permit the trial court to conduct the revocation proceedings after June 5, 2017. The record here indicates that the trial court believed Rue's failure to pay the full amount of restitution extended the term of his community control. Neither the trial court nor the state raised the issue of statutory tolling. We address each of these issues separately.

*Restitution Extension*

{¶ 22} The trial court indicated that Rue's community-control term had been extended based on his prior failure to make restitution. By R.C. 2929.15(A)(1)'s express terms, however, "[t]he duration of all community control sanctions imposed upon an offender under this division *shall not exceed five years*." (Emphasis added.) In its reversal of the trial court's decision, the Eleventh District pointed to the five-year limit in R.C. 2929.15(A)(1), holding that the trial court could not extend Rue's community control beyond the initial five-year term, even if paying restitution was a condition of community control. *See* 2019-Ohio-1720, 136 N.E.3d 1, at ¶ 31.

{¶ 23} The state does not challenge that ruling and acknowledges that this purported extension "as phrased was clearly error." Any failure by Rue to make restitution would not permit his community control to extend beyond the five-year maximum prescribed by R.C. 2929.15(A)(1).

*Tolling Based on Absconding*

{¶ 24} According to the state, Rue's community-control term was automatically tolled, and thus extended, based on two separate instances of alleged absconding.[2] We turn then to the law that is applicable to these circumstances.

{¶ 25} R.C. 2929.15(A)(1) provides that a community-control sentence ceases to run, that is, is tolled, if certain conditions occur. It states:

> If the offender absconds or otherwise leaves the jurisdiction of the court in which the offender resides without obtaining permission from the court or the offender's probation officer to leave the jurisdiction of the court, or if the offender is confined in any institution for the commission of any offense while under a community control sanction, the period of the community control sanction ceases to run until the offender is brought before the court for its further action.

R.C. 2929.15(A)(1).[3]

{¶ 26} For its part, the state relies on R.C. 2951.07, which contains similar tolling language. But R.C. 2951.07 now applies only to probation for misdemeanors committed after January 1, 2004. *See* R.C. 2951.011(B)(2). " 'With

---

2. Rue argues that the state's failure to argue in the trial court that he absconded, so as to toll the running of his community-control term, should operate as a waiver or forfeiture of that issue by the state. The state argues that even if the trial court's stated basis for extending Rue's community control, that is, failure to pay restitution, was erroneous, the trial court's decision can still be upheld if there was an alternative basis for doing so. While the court of appeals could have entertained Rue's contention, it nevertheless proceeded to address the state's tolling claim on the merits, and Rue did not cross-appeal here to take issue with the appellate court's decision to do so. Nonetheless, even if not waived or forfeited, the state's failure to make a record to support statutory tolling has its own legal consequence.

3. Am.Sub.S.B. No. 107, 148 Ohio Laws, Part IV, 8674, 8763, effective March 23, 2000, amended R.C. 2929.15(A)(1) to include this tolling language.

the passage of Am.Sub.S.B. No. 2 in 1995, community control replaced probation as a possible sentence under Ohio's felony sentencing law.' " *State v. Anderson,* 143 Ohio St.3d 173, 2015-Ohio-2089, 35 N.E.3d 512, ¶ 22, quoting *State v. Talty,* 103 Ohio St.3d 177, 2004-Ohio-4888, 814 N.E.2d 1201, ¶ 16.

{¶ 27} By its terms, R.C. 2929.15(A)(1) applies to community control that is ordered in connection with a felony conviction. And although R.C. 2951.07 does refer to offenders "under community control," that language was added by H.B. 490, 149 Ohio Laws, Part V, 9731-9732, effective January 1, 2004, long after the 1996 establishment of community control for felony sentencing by Am.Sub.S.B. No. 2, 146 Ohio Laws, Part IV, 7136. That does not affect the limited application of R.C. Chapter 2951 to misdemeanor offenses committed after January 1, 2004. *See* R.C. 2951.011(B)(2).

{¶ 28} Because this case involves community control for a 2012 felony conviction and not probation for a misdemeanor, issues pertaining to absconding and tolling are governed by R.C. 2929.15(A)(1) and not by R.C. 2951.07. *See State v. Gillespie,* 6th Dist. Lucas No. L-05-1168, 2006-Ohio-1394, ¶ 15. Accordingly, the state's reliance on R.C. 2951.07 is misplaced. We nevertheless treat the state's contentions as if they were based on R.C. 2929.15(A)(1).

{¶ 29} The state contends that Rue's failure to report to his probation officer constituted "absconding" within the meaning of the tolling statute. In *In re Townsend,* 51 Ohio St.3d 136, 137, 554 N.E.2d 1336 (1990), this court held that "the term 'absconds,' as used in R.C. 2951.07, can include a probationer who willfully fails to report to his probation officer even though he may have remained within the territorial jurisdiction of the trial court." Accepting for purposes of this discussion that the term "absconds," as used in R.C. 2929.15(A)(1), includes an offender on community control who willfully fails to report to the supervising authority of the community control, the issue is whether the language of R.C.

2929.15(A)(1) is self-executing, so as to automatically toll the offender's time without any action of the court.

{¶ 30} According to the state, the tolling period for Rue's community-control term ran automatically from November 3, 2016, when Rue initially stopped reporting to probation, until April 20, 2017, when he was brought before the court. If Rue's community control were tolled for those 168 days, his community-control term would have expired on November 20, 2017, rather than its original expiration date of June 5, 2017. And because Rue failed to report on June 20, 2017, the state says his time should again be tolled until he was brought before the court over one year later for his August 23, 2018 probation-violation hearing. Under the state's count, Rue's community control would have been tolled for an additional 429 days and thus did not expire until January 23, 2019.

{¶ 31} Contrary to the state's contentions, however, we hold that tolling for absconding under R.C. 2929.15(A)(1) is not automatically self-executing. Absconding in and of itself has no legal force or effect on the running of the community-control term unless and until the trial court declares that the defendant absconded.

*Statutory Text*

{¶ 32} We begin by examining the text of the relevant statutory provisions. As we have noted, R.C. 2929.15(A)(1) provides that in the event of certain tolling events, "the period of the community control sanction ceases to run until the offender is brought before the court *for its further action*." (Emphasis added.) By its express terms, the tolling of community control stops not just when the defendant is brought before the court; it stops when the defendant is brought before the court for court action. The offender's conduct by itself does not establish that tolling has occurred. It is *court action* that determines as a matter of law whether a tolling event, e.g., a willful failure to report, has occurred, thereby extending the offender's community-control term.

{¶ 33} " 'It is axiomatic in statutory construction that words are not inserted into an act without some purpose.' " *Northeast Ohio Regional Sewer Dist. v. Bath Twp.*, 144 Ohio St.3d 387, 2015-Ohio-3705, 44 N.E.3d 246, ¶ 13, quoting *State ex rel. Carmean v. Hardin Cty. Bd. of Edn.*, 170 Ohio St. 415, 422, 165 N.E.2d 918 (1960). "[O]ur duty is to 'give effect to the words used, not to delete words used.' " *Id.*, quoting *Columbus-Suburban Coach Lines v. Pub. Util. Comm.*, 20 Ohio St.2d 125, 127, 254 N.E.2d 8 (1969). In the matter at hand, R.C. 2929.15(A)(1) allows for tolling of a community-control term as may be determined by the court through "its further action."

{¶ 34} The necessity of court action for purposes of tolling a community-control term is wholly consistent with the court-supervised nature of community control. R.C. 2929.15(A)(2)(a) requires that a defendant placed on community control shall be "under the general control and supervision" of a county probation department "for purposes of reporting to the court a violation of any condition of the sanctions, any condition of release under a community control sanction imposed by the court, a violation of law, or the departure of the offender from this state without the permission of the court or the offender's probation officer." If the defendant "violates any condition of the sanctions, any condition of release under a community control sanction * * *, violates any law, or departs the state without the permission of the court or the [defendant's] probation officer," the probation officer or department "shall report the violation or departure directly to the sentencing court." R.C. 2929.15(A)(2)(b).

{¶ 35} R.C. 2929.15(A)(2) unmistakably imposes reporting requirements on a probation department. If the defendant fails to comply with any condition of the community-control sanctions, violates any condition of release under a community-control sanction, or violates any law, then the probation officer or department *must* report the violation directly to the sentencing court for that court's

action. The sentencing court may then take any action authorized by R.C. 2929.15(B)(1) and R.C. 2929.15(B)(3).

{¶ 36} The penalties for a defendant's violation of any condition of the sanctions or any condition of release, violation of law, or departure from the state without proper permission are plainly not self-executing so as to automatically revoke or otherwise alter the terms and conditions of the defendant's community control. That can occur only after the court has determined that the defendant violated the terms and conditions of the community control.

{¶ 37} The requirement of court action in the event of bad behavior applies with equal force in the event of good, or even exemplary, behavior. R.C. 2929.15(C) provides that "the court may reduce the period of time under [a community-control] sanction or impose a less restrictive sanction" "if [the] offender, for a significant period of time, fulfills the conditions of a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code in an exemplary manner." Surely no one would suggest that an offender's exemplary behavior is self-executing under R.C. 2929.15(C) so as to automatically lessen the offender's sanction. Any adjustment in the terms of community control requires court action.

{¶ 38} Because the statutory scheme for community control under R.C. 2929.15 unmistakably establishes its court-supervised character, the idea that a defendant's conduct may unilaterally alter the terms of his community-control sentence without any involvement of the court is fundamentally inconsistent with that statutory scheme. Indeed, our decision in *Hemsley*, 128 Ohio St.3d 307, 2011-Ohio-226, 943 N.E.2d 1014, undermines the state's contention that tolling is automatic.

{¶ 39} In *Hemsley*, a tolling event—Hemsley's January 2010 unauthorized travel to Mexico—occurred before his community control expired in March 2010. Despite that, we said, "it is unclear whether Hemsley's community control was

tolled pursuant to R.C. 2951.07." *Id*. at ¶ 14. If a tolling event like Hemsley's unauthorized departure from the jurisdiction did automatically toll his community-control term—as the state contends occurred in Rue's case—then there would have been nothing "unclear" about it.

{¶ 40} Moreover, we would have had no reason to consider, much less rule specifically, that the community-control-violation charge was in fact filed before Hemsley's term expired in March 2010. *Id*. at ¶ 13. By the state's reasoning, Hemsley's tolling conduct alone would have made the March 2010 expiration date inoperative and thus would have effectively extended his community-control term until he was brought before the court for its further action. Contrary to the state's argument, however, our decision in that case made clear that the March 2010 expiration date was operative in determining whether the trial court there had the authority to proceed.

{¶ 41} Supporting the state's arguments, Ohio Attorney General Dave Yost has submitted an amicus curiae brief that first directs our attention to R.C. 2901.13(H), which tolls the running of criminal statutes of limitations "during any time when the accused purposely avoids prosecution." Even there, however, there must still be a judicial determination that the accused purposely avoided prosecution before that time may be tolled by law. Our decision in *State v. Bess*, 126 Ohio St.3d 350, 2010-Ohio-3292, 933 N.E.2d 1076, is not to the contrary.

{¶ 42} In *Bess*, we held that former R.C. 2901.13(G), now codified at R.C. 2901.13(H), *see* 2015 Sub.H.B. No. 6, "tolls the statute of limitations for *all* offenses committed by an accused during the time when the accused purposely avoids prosecution, regardless of whether an indictment has been returned or whether underlying criminal activity has been discovered." (Emphasis sic.) *Id*. at syllabus. While acknowledging that the tolling of the statute of limitations is triggered by the actions of the accused to avoid prosecution and not by the state in

commencing a prosecution, *id*. at ¶ 24, nothing in *Bess* suggests that tolling may be applied *without any* determination by the court.

**{¶ 43}** The attorney general next directs our attention to R.C. 2967.15(C)(1), which states that the adult parole authority supervising a parolee or releasee who absconds from supervision "shall declare that person to be a violator at large" and the time between that declaration and the individual's return to state custody "shall not be counted as time served under the sentence imposed on that person or as a part of the term of post-release control." While that statute plainly does not require court action, it is nevertheless instructive that a declaration by the supervising authority is required in order to ascertain the time that will be tolled. That is fundamentally consistent with our reading of R.C. 2929.15(A)(1).

**{¶ 44}** The attorney general then directs our attention to R.C. 2305.15 and 2305.16, both of which toll a civil statute of limitations under certain specified circumstances (e.g., when the defendant has absconded or concealed himself or when a plaintiff is of unsound mind). But the issue here is not what circumstances may cause a limitations period to be tolled. The issue is whether tolling occurs automatically without any judicial determination. Nothing in the text of those statutes suggests that tolling of a civil statute of limitations will be given legal effect without some judicial determination of the issue.

**{¶ 45}** Amicus curiae Summit County Prosecuting Attorney additionally directs our attention to R.C. 2945.72, which tolls the statutory speedy-trial time based on certain specified circumstances (e.g., if the accused is mentally incompetent to stand trial or based on an "improper act" of the accused). Yet again, however, there is no indication in that statute or in our decision in *State v. Brown*, 98 Ohio St.3d 121, 2002-Ohio-7040, 781 N.E.2d 159, which the Summit County prosecutor cites, that stopped time will be given legal effect without some determination of the issue by the court.

**{¶ 46}** Viewed strictly by its plain textual terms, the tolling provision of R.C. 2929.15(A)(1) is not self-executing so as to extend automatically a community-control sentence based solely on the defendant's alleged absconding. While we have no disagreement that a defendant's failure to report to probation while serving a community-control sentence may trigger tolling under R.C. 2929.15(A)(1), that conduct does not by itself have any cognizable legal effect unless and until the trial court, through "its further action," determines in timely initiated proceedings that the defendant absconded. And it is then that the court can put the defendant on notice of the effect that his conduct had on the community-control sentence, including whether the defendant's conduct affected the expiration date of his community-control term.

**{¶ 47}** The dissenting opinion misreads the tolling provision, our opinion, or both when it says that we rely on R.C. 2929.15(A)(1)'s phrase, "until the offender is brought before the court for further action" for the premise that "official action is necessary for tolling to occur," dissenting opinion at ¶ 72, but that we later disregard that language when observing that revocation proceedings can be initiated before the community-control term expires "even in the absence of the absconding defendant," dissenting opinion at ¶ 72. The dissent's critique is incorrect in several respects.

**{¶ 48}** First, the dissenting opinion misreads the text of R.C. 2929.15(A)(1): this provision actually states that the period of the community-control sanction ceases to run "until the offender is brought before the court for *its* further action (emphasis added)," thus confirming that official court action is necessary. Second, official court action is necessary not for tolling to "occur" but, rather, for tolling to be given legal effect once the court has determined that the offender absconded. Third, our opinion does not in any way abandon the statutory requirement of official court action just because revocation proceedings can be initiated even in the absence of the absconding defendant. So long as the proceedings were initiated

16

prior to the expiration of the defendant's community-control term as originally set (or as lawfully extended by the court), they effectively relate back and may be adjudicated by the court even after the expiration of the community-control term. *See Hemsley*, 128 Ohio St.3d 307, 2011-Ohio-226, 943 N.E.2d 1014, at ¶ 13.

{¶ 49} Acknowledging that the tolling language of R.C. 2929.15(A)(1) is structured grammatically with an introductory "if" clause (i.e., "If the offender absconds or otherwise leaves the jurisdiction of the court * * *"), the dissent readily concedes that "of course, nobody disagrees that 'if' is conditional," dissenting opinion at ¶ 73. That introductory conditional clause (and the other introductory "if" clause for prison confinement) is followed by a comma, which in turn is followed by the consequence clause stating, "the period of the community control sanction ceases to run until the offender is brought before the court for its further action." R.C. 2929.15(A)(1). The General Assembly's use of the word "if" followed by the consequence clause manifests an intent to establish that the circumstance of absconding is a conditional matter of fact that must be determined by the court. So, while an offender's failure to report may start the tolling of his community-control term, that tolling cannot be given legal *effect* until the court has determined that the offender in fact absconded.

{¶ 50} The facts of this case illustrate our reasoning.

*2017 Revocation Proceedings*

{¶ 51} Rue initially stopped reporting to probation on November 3, 2016. On March 9, 2017, a warrant for his arrest was issued.[4] On April 20, 2017, he was brought before the sentencing court for a probation-violation hearing. The judgment entry from the trial court's April 2017 hearing reflects that the court found

---

4. The record contains no explanation as to why it took four months, from November 3 2016 until March 9, 2017, for an arrest warrant to issue. In any case, the proceedings were initiated before Rue's community-control term was due to expire.

Rue guilty of an unspecified probation violation and continued his community control with monthly restitution payments until restitution was paid in full.

{¶ 52} Nothing in the record before this court reflects that the issue of tolling based on absconding was raised at the April 20, 2017 hearing. The trial court's April 27, 2017 judgment entry does not include a finding that Rue had absconded and does not address statutory tolling under R.C. 2929.15(A)(1) in any respect. The court simply continued Rue's community control and ordered him to "remain on supervision" until restitution was paid in full.

{¶ 53} There was no judicial determination that Rue absconded by willfully failing to report to his probation officer, and we reject the state's contention that his time was automatically tolled even in the absence of such a determination by the trial court. The trial court's April 27, 2017 judgment entry assuredly did not provide any notice that tolling would apply to change the June 5, 2017 expiration date of Rue's community control. At a minimum, "truth in sentencing" requires that a defendant be given notice that certain conduct will adversely affect the terms of a community-control sentence. *See, e.g.*, *State v. Fraley*, 105 Ohio St.3d 13, 2004-Ohio-7110, 821 N.E.2d 995 (court sentencing offender upon community-control violation must notify offender of specific prison term that may be imposed for subsequent violation); *State v. Brooks*, 103 Ohio St.3d 134, 2004-Ohio-4746, 814 N.E.2d 837 (court sentencing offender to community control must notify offender of specific prison term that may be imposed for a violation of conditions).

{¶ 54} On this record, Rue's community-control term expired on June 5, 2017. R.C. 2929.15(A)(1) did not automatically toll that term based on the state's belated claim of tolling in the court of appeals. But even if we were to assume—notwithstanding the absence of any judicial declaration—that Rue's failure to report to probation from November 3, 2016, until he was brought before the court on April 20, 2017, constituted absconding that tolled his community-control term under R.C. 2929.15(A)(1), that term would have expired, by the state's own count,

on November 20, 2017. The issue, then, would be whether the 2018 revocation proceedings were initiated before Rue's community-control term expired.

*2018 Revocation Proceedings*

{¶ 55} Rue failed to report on June 20, 2017. No revocation proceedings were initiated, however, until December 18, 2017, when a warrant for his arrest was issued.[5]

{¶ 56} As noted previously, a court is "authorized to conduct proceedings on the alleged community-control violations even though they were conducted after the expiration of the term of community control, *provided that the notice of violations was properly given and the revocation proceedings were commenced before the expiration.*" (Emphasis added.) *Hemsley*, 128 Ohio St.3d 307, 2011-Ohio-226, 943 N.E.2d 1014, at ¶ 13; *see also Untied*, 131 Ohio St.3d 37, 2011-Ohio-6343, 959 N.E.2d 1048, at ¶ 2. Rue's revocation proceedings were not commenced before November 20, 2017. So even if we were to assume that his prior violation extended his community-control term to that date, as the Eleventh District did in its opinion, 2019-Ohio-1720, 136 N.E.3d 1, at ¶ 27-39, the 2018 revocation proceedings were still not instituted in time.

{¶ 57} The state maintains that Rue's failure to report on June 20, 2017, was by itself an additional tolling event that automatically suspended the running of his community-control term. The state would thus have us interpret R.C. 2929.15(A)(1) so that a defendant's failure to report conclusively suspends the running—and thus expiration—of the community-control term. By that reasoning, an offender's single failure to report to probation would automatically trigger tolling, whereby the community-control term would cease to run and would remain tolled indefinitely thereafter, unless and until the state initiated revocation proceedings at its leisure, whenever that may be. The state could then initiate

---

5. The record again contains no explanation as to why it took six months, from June 20, 2017 until December 18, 2017, for an arrest warrant to issue.

revocation proceedings months, if not years, after it knew about the tolling event because the defendant's failure to report would have left the community-control term open indefinitely.

{¶ 58} We think that interpretation is foreclosed by the language in R.C. 2929.15(A)(1) that places a five-year maximum term on community control that can be tolled only by the court through "its further action." Moreover, that approach would have the absurd effect of creating more, not less, uncertainty. By contrast, our decision today simply confirms that the initiation of revocation proceedings prior to the expiration of the community-control term vests the court with the authority to complete those proceedings, even after the expiration of the applicable community-control term.

{¶ 59} Tolling does not happen automatically; it requires judicial action. And the proceedings to obtain that declaration must be initiated before the community-control term expires. In this case, the state offers no explanation for its failure to initiate proceedings promptly after the June 20, 2017 failure to report, much less for the six-month delay in obtaining an arrest warrant.

{¶ 60} Moreover, as was the case with the 2017 revocation proceedings, the state did not ask that Rue be declared to have absconded. The trial court's September 12, 2018 judgment entry did not find that Rue had absconded and again did not even address statutory tolling under R.C. 2929.15(A)(1). As we discussed previously, tolling events have no cognizable legal effect until a court that has the authority to conduct revocation proceedings says so.

{¶ 61} Aside from the lack of any proceedings to toll Rue's community-control term based on absconding, we are troubled by the lack of notice as to when his community-control term actually expired. The date on which a community-control sentence expires cannot be an unspecified moving target that is open to guesswork. At a minimum, it ought to be ascertainable by the defendant with

reasonable precision. And for the expiration date of that term to be tolled under R.C. 2929.15(A)(1), there must be court action to reflect that fact.

{¶ 62} In this case, the trial court's April 27, 2017 judgment entry did not indicate that Rue's community-control term had been tolled, and if so, for how long. Rue thus had no notice that his term would be extended beyond June 5, 2017. That he failed to report on June 20, 2017, may therefore have been a misunderstanding. That the state did not act on that failure to report for six full months is inexplicable.

{¶ 63} We therefore agree with the Eleventh District that the trial court lacked the authority to revoke Rue's community control and sentence him to serve two years in prison because the 2018 revocation proceedings were not commenced before the expiration of his community-control term. To the extent that the conflict case, *Meyer*, 2014-Ohio-3705, 18 N.E.3d 805, held that the trial court was authorized to conduct community-control-revocation proceedings that were initiated after the community-control term expired, that decision is contrary to our decisions in *Hemsley*, 128 Ohio St.3d 307, 2011-Ohio-226, 943 N.E.2d 1014 and *Untied*, 131 Ohio St.3d 37, 2011-Ohio-6343, 959 N.E.2d 1048 and is hereby disapproved.

{¶ 64} Finally, we see no basis to remand this case for further proceedings. Because the trial court lacked the authority to conduct these proceedings based on the failure to timely commence them, there are no further steps that could be taken to correct that error. And given the failure by the state and by the trial court to even address tolling based on absconding during the trial-court proceedings, that issue is now forfeited and therefore barred from further consideration. *See State v. Gwynne*, 158 Ohio St.3d 279, 2019-Ohio-4761, 141 N.E.3d 169, ¶ 10 ("An argument is forfeited when it is not timely asserted").

## CONCLUSION

{¶ 65} Tolling for absconding under R.C. 2929.15(A)(1) is not automatically self-executing. Absconding by itself has no legal force or effect on

the running of the community-control term unless and until the trial court declares the defendant to have absconded. Because the trial court made no such determination in this case, Rue lacked even minimally adequate record notice that the expiration date of his community-control term had been extended, and the state failed in any event to provide notice and initiate the revocation proceedings for Rue's supposed June 20, 2017 failure to report before the expiration of his community-control term. We accordingly affirm the judgment of the Eleventh District Court of Appeals.

Judgment affirmed.

O'CONNOR, C.J., and FRENCH and STEWART, JJ., concur.

DEWINE, J., dissents, with an opinion joined by KENNEDY and FISCHER, JJ.

_____

**DEWINE, J., dissenting.**

{¶ 66} R.C. 2929.15(A)(1) provides that if an offender absconds while serving a community-control sentence, his term of community control "ceases to run until the offender is brought before the court for its further action." The terms of this "tolling provision" are clear, but the majority decides today that the provision just has to mean something other than what it says. In its view, an absconder's community-control term ceases to run only if all of the following occur: (1) an offender absconds, (2) violation proceedings are initiated within the original community-control term (without any adjustment for tolling), and (3) a judge makes a finding that community control has been tolled. That's not what the statute says, so I dissent. I would reverse the decision of the Eleventh District Court of Appeals and reinstate the decision of the trial court.

### *The Plain Terms of the Tolling Provision*

{¶ 67} A court may place a defendant on community control for up to five years. R.C. 2929.15(A)(1). This period is automatically tolled in certain circumstances:

22

> If the offender absconds or otherwise leaves the jurisdiction of the court in which the offender resides without obtaining permission from the court or the offender's probation officer to leave the jurisdiction of the court, or if the offender is confined in any institution for the commission of any offense while under a community control sanction, the period of the community control sanction *ceases to run* until the offender is brought before the court for its further action.

(Emphasis added.)  *Id*.  Thus, tolling occurs by operation of law *if* an offender absconds and that period of tolling continues *until* the offender is brought before the court.

{¶ 68} We have previously held that a trial court's authority over an offender generally ends upon the expiration of his community-control sentence if the court has not taken some form of action before that expiration. *State ex rel. Hemsley v. Unruh*, 128 Ohio St.3d 307, 2011-Ohio-226, 943 N.E.2d 1014, ¶ 13.  At issue here is whether the trial court loses its authority to hold a community-control revocation proceeding for an absconder when that proceeding is *within* the tolling-adjusted community-control term but *after* the expiration of the original term.

{¶ 69} The plain language of the tolling provision makes the answer clear: the offender's community-control sentence "ceases to run" if the offender absconds and the tolling continues "until" the offender is brought before the court.  Because absconding tolls an offender's community-control sentence, the expiration of that sentence is necessarily extended.  As a result, the trial court retains its authority to revoke community control when an offender has absconded.

### The Majority's Rewrite of the Statute

{¶ 70} Rather than apply the plain language of the statute, the majority engages in a convoluted analysis and ultimately determines that the statute means something other than what it says. First, the majority says that tolling doesn't occur when an offender absconds; it occurs only when the absconder is caught and brought before the court for further action and the court determines that the offender has absconded. Majority opinion at ¶ 48. Second, the majority decides that even when an offender has absconded (thereby tolling his community-control sentence), a court lacks authority to conduct revocation proceedings if the state failed to *initiate* the proceedings before the expiration of the defendant's *original* community-control sentence. Majority opinion at ¶ 48.

{¶ 71} Neither dog hunts. In concluding that court action is required for tolling to occur, the majority looks to the phrase " 'ceases to run until the offender is brought before the court *for its further action*,' " (emphasis in majority opinion) majority opinion at ¶ 32, quoting R.C. 2929.15(A)(1). It then opines that this means that the act of absconding has no "cognizable legal effect unless and until the trial court, through 'its further action,' determines that the defendant absconded." *Id*. at ¶ 48, quoting R.C. 2929.15(A)(1). But the statute cannot support this reading. The phrase "*until the offender is brought before the court* for further action," (emphasis added) R.C. 2929.15(A)(1), denotes the end of the tolling period, not its start. *See Webster's Third New International Dictionary* 2513 (2002) (until: "a function word to indicate continuance * * * up to a particular time").

{¶ 72} The majority's attempt at textual analysis here is so strained that the majority is forced to quickly abandon it. The majority relies on the phrase "until the offender is brought before the court for its further action" for its premise that official action is necessary for tolling to occur. But later in the opinion, the majority drops the "until the offender is brought before the court" part of the statute from

the equation, telling us that "proceedings can be initiated *even in the absence of* the absconding defendant," majority opinion at ¶ 48.

{¶ 73} The majority also stretches basic concepts of grammar to get the results it seeks. The majority pronounces that "[t]he General Assembly's use of the word 'if' followed by the consequence clause manifests an intent to establish that the circumstance of absconding is a conditional matter of fact that must be determined by the court." *Id.* at 49. But of course, nobody disagrees that "if" is conditional. And here, the statute makes perfectly clear the condition that must be met for tolling to occur: "if the offender absconds * * * the period of the community control sanction ceases to run." R.C. 2929.15(A)(1).

{¶ 74} By misreading the tolling provision in this way, the majority builds the foundation for its second erroneous conclusion. There is no statutory requirement that the state commence revocation proceedings within the original community-control term. To the contrary, the plain language of the tolling provision provides just the opposite: when an offender absconds, the community-control term "ceases to run." Thus, a community-control term cannot expire while an absconder is at large, and the community-control sanction remains in place.

{¶ 75} To get around this obvious result, the majority says this interpretation "is foreclosed by the language in R.C. 2929.15(A)(1) that places a five-year maximum term on community control that can be tolled only by the court through 'its further action.' " Majority opinion at ¶ 58. But, again, the tolling provision says nothing of the sort. The period of community control "ceases to run" when the offender absconds; the court's "further action" marks the end of the tolling period, not its start.

{¶ 76} Implicitly acknowledging that the tolling provision cannot bear the weight that it assigns to it, the majority flails for support outside of the provision's text. It points to other parts of R.C. 2929.15 that empower courts to impose sanctions for violations or to reduce community-control sentences for exemplary

behavior and that require probation officers to report community-control violations. Majority opinion at ¶ 34-37. The majority reasons that because official action is required in these other contexts, court action also must be needed to start the tolling of a community-control sentence. *Id.* at ¶ 48. To allow tolling to occur without court action, the majority contends, would be "fundamentally inconsistent" with the "court-supervised character" of the statutory scheme. *Id.* at ¶ 38.

{¶ 77} But that doesn't make sense. Our duty is to apply the text that we have been given, not to rewrite that text based on some vague conception of the overall character of the statutory scheme. And there is nothing inconsistent about a scheme that tolls a community-control term by operation of law when an offender absconds but requires a judicial order to do things like punish the offender.

{¶ 78} Contrast R.C. 2929.15(A)(1)'s tolling provision with a statute that *does* expressly impose additional requirements to toll an offender's sentence. R.C. 2967.15(C)(1) tolls a period of parole from "the date on which a person * * * is declared [by the parole authority] to be a violator" to "the date on which that person is returned to custody." Certainly, then, the legislature knows how to write a statute that requires official action before tolling takes place; it just didn't do so in the tolling provision. Remarkably, though, the majority says that R.C. 2967.15(C)(1)'s reporting and declaration requirements for tolling are "fundamentally consistent with [its] reading" of the tolling provision. Majority opinion at ¶ 43. But, of course, that consistency arises only *after* the majority has inserted extratextual requirements into the tolling provision.

{¶ 79} The majority also attempts to support its position through a creative reading of our decision in *Hemsley*, 128 Ohio St.3d 307, 2011-Ohio-226, 943 N.E.2d 1014. Majority opinion at ¶ 38-40. Hemsley was charged with violating the terms of his community control by taking a trip of an unspecified duration to Mexico. *Hemsley* at ¶ 4. He pleaded not guilty to the violation, and the court continued the hearing to a date that fell after his community-control sentence had

been set to expire. *Id.* Hemsley sought a writ of prohibition, arguing that the trial court lacked jurisdiction to conduct a revocation hearing after his community-control term had ended. *Id.* at ¶ 6. We rejected that argument, concluding that the trial court did not patently and unambiguously lack jurisdiction, because it was sufficient that the notice of violation had been served and the proceedings had been commenced prior to the expiration of Hemsley's community-control term. *Id.* at ¶ 10-13. As further support for our conclusion that there was not a patent and unambiguous lack of jurisdiction, we noted that it was "unclear" whether Hemsley's community control had been tolled because of his trip to Mexico. *Id.* at ¶ 14.

{¶ 80} From these facts, the majority leaps to remarkable conclusions. First, it says that the court's statement that it was "unclear" whether community control was tolled as a result of the Mexican foray means that absconding cannot by itself toll community control. Majority opinion at ¶ 39. It postulates that "if a tolling event like Hemsley's unauthorized departure from the jurisdiction did automatically toll his community-control term * * * then there would have been nothing 'unclear' about it." *Id*. at ¶ 39. But one could just as easily argue the corollary*: if a tolling event like Hemsley's unauthorized departure from the jurisdiction did **not** automatically toll his community-control term * * * then there would have been nothing 'unclear' about it.* So that the court said it was "unclear" proves nothing; it is best understood as simply an acknowledgement that the issue was not before the court.

{¶ 81} Second, the majority theorizes that if tolling occurs by operation of law, there would have been no reason to consider the original termination date in *Hemsley* because the Mexico trip would have extended the community-control term. Majority opinion at ¶ 40. But that doesn't follow either. The simple fact is that there was no need for this court to consider the impact of the Mexico trip on

Hemsley's community-control term because even without tolling, the trial court had timely commenced the proceeding. *See Hemsley* at ¶ 13.

{¶ 82} In its zeal to make the statute say what it wants it to say, the majority also overlooks the bizarre effects of its own reading. The tolling provision applies not just to an offender who absconds but also to one who is imprisoned for another offense during his term of community control. R.C. 2929.15(A)(1). Would the majority really conclude that a sentence of imprisonment does not toll community control unless the offender is brought before the judge who sentenced him to community control and that judge takes some action to officially declare him incarcerated?

### *Application of the Plain Terms of the Tolling Provision*

{¶ 83} Things get far easier when we just apply the plain terms of the tolling provision. The majority says that Rue's five-year period of community control began to run on June 5, 2012. Majority opinion at ¶ 4, fn. 1. Rue absconded twice. On the first occasion, his probation officer told the court that Rue had stopped reporting on November 3, 2016. He was not brought before the trial court until April 20, 2017. At the August 2018 hearing, Rue's attorney conceded that Rue's community-control term was tolled when he absconded the first time, but that the period of tolling was only one month.[6] The state has taken the position that it was tolled for the entire 168-day period from November 3, 2016, until the April 20, 2017 violation hearing. Based on the plain language of the tolling provision, the state has the better argument, but under either reading, Rue's five-year community-control term had not expired when he absconded again on June 20, 2017.

{¶ 84} When Rue absconded for the second time, his community-control term once again "ceased to run" until he was brought before the court for the

---

6. In his brief to this court, Rue claimed that any amount of tolling would have been at most 42 days, measured from Rue's March 9, 2017 bench warrant to when Rue was brought before the court on April 20, 2017. Rue's trial counsel was likely referring to that time period.

violation hearing on August 23, 2018. Because Rue's community-control term had not yet expired, the trial court had the authority to revoke his community control and send him to prison.

{¶ 85} It is true that the trial court did not make an explicit finding that community control had been tolled at either the April 2017 or August 2018 hearing. Following the April 2017 hearing, the trial court's journal entry said that it was extending Rue's community control until restitution was paid in full. There is no indication that Rue's attorney objected to the extension. At the August 2018 hearing, the trial court said that Rue's community-control term had previously been extended but failed to cite tolling as the reason. (At one point, the court said that community control had been extended for his failure to pay restitution, and at another, it said that community control had been extended for multiple violations.).

{¶ 86} But even though the trial court gave the wrong reason for its continuing authority over Rue at the August 2018 hearing, Rue properly remained on community control because his five-year community-control term had ceased to run during the periods that he absconded. "We have 'consistently held that a reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as the basis thereof.' " *Salloum v. Falkowski*, 151 Ohio St.3d 531, 2017-Ohio-8722, 90 N.E.3d 918, ¶ 12, quoting *Joyce v. Gen. Motors Corp.*, 49 Ohio St.3d 93, 96, 551 N.E.2d 172 (1990). Thus, the trial court's sentence should have been sustained.

{¶ 87} I am not unsympathetic to some of the policy concerns that underlie the majority's extrastatutory reading of the tolling provision. As a matter of best practice, when a tolling event has taken place, the trial judge should, by entry, find that a tolling event has occurred and denote the new date for the expiration of the community-control term. But this is a matter of sound judicial administration, not a statutory requirement. And here, there is no question that Rue knew that he remained under community control at the time that he absconded.

## *Conclusion*

{¶ 88} I would follow the plain terms of R.C. 2929.15(A)(1) and hold that Rue's term of community control ceased to run during the time that he absconded. As a consequence, I would reverse the decision of the court of appeals and reinstate the judgment of the trial court.

KENNEDY and FISCHER, JJ., concur in the foregoing opinion.

––––––––––––––––––

Dennis Watkins, Trumbull County Prosecuting Attorney, and Ashleigh Musick, Assistant Prosecuting Attorney, for appellant.

Michael A. Partlow, for appellee.

Dave Yost, Attorney General, Benjamin M. Flowers, State Solicitor, and Zachery P. Keller and Jeffrey R. Loeser, Deputy Solicitors, urging reversal for amicus curiae Attorney General Dave Yost.

Sherri Bevan Walsh, Summit County Prosecuting Attorney, and Jacquenette S. Corgan, Assistant Prosecuting Attorney, urging reversal for amicus curiae Summit County Prosecuting Attorney.

Timothy Young, Ohio Public Defender, and Max Hersch, Assistant Public Defender, urging affirmance for amicus curiae Ohio Public Defender.

––––––––––––––––––