[Cite as *State v. Lynch*, 2026-Ohio-553.]

COURT OF APPEALS OF OHIO

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

STATE OF OHIO,                           :

    Plaintiff-Appellant,         :

                                  :          No. 114955

    v.                           :

JAMES ARMAND LYNCH,                      :

    Defendant-Appellee.          :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** February 19, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-15-601167-A

---

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Michael R. Wajda and Michael Stechschulte, Assistant Prosecuting Attorneys, *for appellant.*

Cullen Sweeney, Cuyahoga County Public Defender, and Michael V. Wilhelm, Assistant Public Defender, *for appellee.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Pursuant to R.C. 2945.67(A) and with leave of court, appellant the State of Ohio appeals the trial court's decision terminating James Armand Lynch

from community-control sanctions. For the reasons that follow, this court reverses the trial court's judgment and remands the case for the trial court to consider whether it retained the authority to conduct any community-control violation proceedings, and if so, whether any tolling event occurred and what effect that event has on Lynch's community-control term.

## I.    Procedural and Factual Background

{¶ 2} In 2016, Lynch pleaded guilty to attempted drug trafficking, possessing criminal tools, and endangering children. The trial court ordered Lynch to serve seven years in prison, consecutively to three, one-year concurrent sentences imposed in separate and unrelated cases. On July 29, 2022, the trial court granted Lynch judicial release, ordering him to serve two years of probation, i.e., community-control sanctions.

{¶ 3} On June 12, 2023, the trial court scheduled a probation-violation hearing for the following day.[1] The order provided: "Community control sanctions violation/probation violation hearing set for 6/13/2023 at 9:00 a.m. at the request of the court." The order did not provide any basis for the hearing or the alleged violation. Moreover, the State did not file any notice or statement of violations, nor did it move to revoke Lynch's community control.

{¶ 4} On June 13, 2023, Lynch did not appear in court, and the trial court did not conduct a hearing. The trial court entered the following order:

---

[1] It is noted that although the journal entry was prepared on June 7, 2023, it was neither signed nor filed until June 12, 2023.

On the 13th day of June, 2023, the defendant, James Armand Lynch, failing to appear in court as he/she was bound to do by the conditions of his/her recognizance, the court orders that the said recognizance, taken heretofore in this cause be, and the same is, forfeited absolutely. It is further ordered that the clerk shall forthwith give as provided by law, the surety of record, or the defendant if the defendant was released on personal bond, notice to appear in this court on or before the 12th day of August, 2023. If there is a surety, such surety shall produce the body of said defendant, or show why judgment shall not be entered against him/her for the amount of the recognizance given in this cause. If the defendant was released on a personal bond, the defendant shall show why judgment shall not be entered against him/her for the amount of the recognizance given in this cause. It is further ordered that a capias be issued for the said defendant. Defendant not present in court. Community control sanctions violation/probation violation hearing not held.

The trial court issued a separate arrest warrant on this same day.

{¶ 5} On January 8, 2025, after community control would have expired, Lynch moved to "withdraw hold and reinstate [his] bond with additional conditions." In his motion, Lynch, through counsel, stated that "[Lynch] previously completed one (1) year of a two (2) year supervision term in the above captioned matter. Nevertheless, a capias was issued on June 13, 2023 following defendant's failure to appear at a Community Control Sanctions violation hearing." His motion further advised that he was arrested in November 2024 on unrelated charges and remained in the county jail.

{¶ 6} The State opposed the motion, contending that Lynch was a "violent, habitual and apparently unrehabilitated criminal who has never performed successfully in the community, including while under Court supervision," and noting that Lynch committed new criminal offenses in February 2024 and

September 2024. The State further argued that following the trial court's decision to grant him judicial release, Lynch "failed to appear for [a] violation hearing and remained capias until he was arrested on his present charges."

{¶ 7} On February 24, 2025, the State supplemented its opposition to Lynch's motion. The supplement was in response to the trial judge meeting "with [the prosecutor] and defense counsel in chambers on February 13, 2025," during which, "the Court expressed that it believe[d] [Lynch's] probationary term lapsed." The State's position was that when Lynch failed to appear at the probation-violation hearing, his probationary term had tolled. The State acknowledged the Ohio Supreme Court's split decision in *State v. Rue*, 2020-Ohio-6706, which held that tolling a probation term for absconding under R.C. 2929.15(A)(1) is not automatically self-executing, but requires judicial factfinding and "due process." Notwithstanding the State's belief that *Rue* was wrongly decided, it maintained that the facts and procedural posture of the instant case were distinguishable from *Rue* because, unlike in *Rue*, an arrest warrant was timely issued and Lynch received sufficient notice that his failure to appear at the violation hearing would toll his probationary term.

{¶ 8} On February 25, 2025, the trial court conducted a hearing on Lynch's motion to withdraw the capias and reinstate bond. Lynch maintained that his motion should be granted but also asserted that his two-year period of community-control sanctions expired without extension by any tolling event. He advanced that because the trial court's June 2023 orders did not make any finding that he

"absconded" or provide fair notice that his term of community control was therefore tolled, the Ohio Supreme Court's decision in *Rue* mandated the trial court to find that his period of community control terminated.

{¶ 9} The State disagreed, contending that the trial court's June 13, 2023 journal entry finding that Lynch failed to appear and subsequent arrest warrant equated to an absconding finding and by operation of law, constituted a tolling event under R.C. 2929.15(A)(1). The State maintained that *Rue* was nevertheless distinguishable.

{¶ 10} The trial court agreed with Lynch, finding that *Rue* required a declaration that Lynch absconded and an "explicit[] indicat[ion]" that the community control time was therefore tolled. The court stated that "neither of these points were accomplished" in the court's June 2023 journal entries. The trial court, therefore, terminated Lynch's probation.[2]

{¶ 11} This appeal followed, with the State raising two assignments of error.

## II.   The Appeal

### A. Application of *Rue*

{¶ 12} In its first assignment of error, the State contends that the trial court erred by incorrectly extending *Rue*, 2020-Ohio-6706, to apply to cases in which violation proceedings had already been initiated before the expiration of a community-control sanction, contrary to *Rue's* express holding.

---

[2] The record does not reflect that the trial court considered any probation reports in rendering its decision.

{¶ 13} We typically review a judgment terminating probation under an abuse-of-discretion standard. *State v. Carter*, 1998 Ohio App. LEXIS 5413, *6 (8th Dist. Nov. 12, 1998). However, because the court based its decision on an interpretation and application of the law, we review this appeal under a de novo standard. *State v. Straley*, 2014-Ohio-2139, ¶ 9.

{¶ 14} The State continues to argue that *Rue* is distinguishable, raising the same arguments as it did in the trial court. In further support of its position, the State advances an additional argument that *Rue* applies "only when the five-year statutory maximum has passed without the trial court making any reference to a defendant's abscondence." Applying this distinction, according to the State, "means that Lynch's sanctions were tolled when the trial court issued a capias."

{¶ 15} R.C. 2929.15(A)(1) provides, in relevant part:

> If the offender absconds or otherwise leaves the jurisdiction of the court in which the offender resides without obtaining permission from the court or the offender's probation officer to leave the jurisdiction of the court, or if the offender is confined in any institution for the commission of any offense while under a community control sanction, the period of the community control sanction ceases to run until the offender is brought before the court for its further action.

{¶ 16} In *Rue*, 2020-Ohio-6706, the Ohio Supreme Court addressed whether a trial court had the authority to conduct a community-control revocation proceeding after an offender absconds from community control, but the commencement of the revocation proceedings does not occur before the expiration of the community-control term. The court held that "[t]olling for absconding under R.C. 2929.15(A)(1) is not automatically self-executing. Absconding by itself has no

legal force or effect on the running of the community-control term unless and until the trial court declares that the defendant absconded." *Id.* at ¶ 65. Because absconding is not self-executing, the trial court must be authorized to make the declaration that the defendant absconded. *Id.* at ¶ 59, 65. "A trial court is 'authorized to conduct proceedings on the alleged community-control violations even though they were conducted after the expiration of the term of community control, *provided* that notice of violations was properly given *and* the revocation proceedings were commenced before the expiration.'" (Emphasis added.) *Rue* at ¶ 18, quoting *State ex rel. Hemsley v. Unruh*, 2011-Ohio-226, ¶ 13.

{¶ 17} Accordingly, and based on our reading, *Rue* involved two separate issues — the *Hemsley* threshold question of the trial court's authority to conduct a revocation proceeding after community control expires, and then whether under R.C. 2929.15(A)(1) the trial court made any declarations at a revocation proceeding about tolling and its effect.

{¶ 18} The State contends that the trial court's June 2023 journal entries complied with *Rue's* mandates because revocation proceedings were initiated when the trial court issued the arrest warrant after Lynch failed to appear for the community-control-violation hearing; thus the court retained authority to conduct a revocation hearing even after his probationary period expired.

{¶ 19} Lynch contends that merely issuing a timely arrest warrant is insufficient under *Rue*. In support, Lynch relies on *State v. Padgett*, 2023-Ohio-4357 (3d Dist.), and subsequent cases relying on *Padgett*. *See, e.g., State v. Davila*,

2024-Ohio-2672 (11th Dist.), and *State v. Washington*, 2024-Ohio-2670 (11th Dist.).

{¶ 20} In *Padgett*, the defendant was sentenced to three years of community control in 2001.  In 2003, the trial court issued a bench warrant for the defendant's arrest.  The warrant included information that the defendant failed to abide by the conditions of her supervision and her whereabouts were unknown.  Eighteen years later, in 2022, the defendant was located and served with the arrest warrant.  The following day, the probation department filed a notice of violation and moved to revoke the defendant's community control because the defendant failed to (1) report to probation, (2) pay the court-ordered restitution, and (3) update her address.

{¶ 21} At the hearing, the defendant contended that the trial court lacked authority to proceed because her probation term had expired without any tolling event or revocation proceedings commencing within community-control term.  The State contended during the revocation hearing that the arrest warrant issued for Padgett in February 2003 preserved the trial court's authority to proceed with the revocation hearing.  The trial court revoked the defendant's community control and ordered her to serve a jail sentence.

{¶ 22} On appeal, the Third District rejected the State's argument, finding that although the arrest warrant contained language that the defendant failed to abide by conditions of supervision and that her whereabouts were unknown, "merely issuing the arrest warrant [did not] constitute[] a 'determination' by the trial court in 'timely initiated proceedings' that the defendant had absconded, as required

. . . in *Rue*." *Id.* at ¶ 19. The *Padgett* Court further noted that "as . . . deemed necessary in *Rue*, the arrest warrant contained no language that would have served to put [the defendant] on notice, even constructively, that her term of community control had been extended, or tolled, as a result of her failure to abide by the conditions of her supervision." *Id.*

{¶ 23} Respectfully and as it will be discussed, we find *Padgett* and its progeny unpersuasive because our reading of *Rue* suggests that an arrest warrant filed prior to the expiration of community control could, in fact, initiate revocation proceedings, thus preserving the trial court's authority to conduct proceedings beyond the community-control term.

{¶ 24} In *Rue*, the Ohio Supreme Court noted that Rue's 2018 revocation proceedings were not initiated "*until* December 18, 2017, *when* a warrant for his arrest was issued," which was after Rue's community control expired. (Emphasis added.) *Rue*, 2020-Ohio-6706, at ¶ 55. By making this distinction, the Court necessarily determined that the arrest warrant initiated the revocation proceedings. Finding that the arrest warrant was issued after Rue's probation that expired on November 20, 2017, the Court concluded that the trial court lacked the authority to make any judicial determinations about whether Rue's community-control term extended because of a tolling event. *Id.* at ¶ 56-59. "Tolling does not happen automatically, it requires judicial action. And the proceedings to obtain that declaration must be initiated before the community-control term expires." *Id.* at ¶ 59.

{¶ 25} Applying that same rationale and starting point in this case, the trial court issuing the warrant on June 13, 2023, which was prior to the expiration of Lynch's community-control term, initiated the revocation proceedings. Accordingly, for this reason alone, *Rue* is procedurally distinguishable. Because revocation proceedings were timely initiated, the first aspect of the *Hemsley* threshold question is satisfied, and thus the trial court could have retained the authority to determine whether a tolling event occurred and its effect, which could extend his community-control term under R.C. 2929.15(A)(1). *Rue* at ¶ 56, and *Hemsley*, 2011-Ohio-226, at ¶ 13.

{¶ 26} The second aspect of *Hemsley* that is necessary for the court to retain authority over an expired community-control term is whether "notice of violations was properly given." *Id.* In this case, the trial court did not consider or make any finding whether Lynch properly received notice of the violations. Accordingly, the trial court failed to follow *Rue* by not considering the court's own authority to determine whether a tolling event occurred or its effect.

{¶ 27} The court misread *Rue* and focused on the lack of "absconding" or "tolling" notifications in the 2023 journal entry issued after Lynch failed to appear at the probation-violation hearing. Rather, under *Rue*, whether the defendant absconds or community control is tolled is a determination made *when* "the offender is brought before the court for its further action." (Emphasis added.) *Rue*, 2020-Ohio-6706, at ¶ 32. The Court stated:

> By its express terms, the tolling of community controls stops not just when the defendant is brought before the court; it stops when the defendant is brought before the court for court action. The offender's conduct by itself does not establish that tolling has occurred. It is *court action* that determines as a matter of law whether a tolling event, e.g., a willful failure to report, has occurred, thereby extending the offender's community control.

(Emphasis sic.) *Id.*

{¶ 28} Based on *Rue*, the trial court could not have conducted its "further action" on determining whether a tolling event occurred until Lynch was brought before the court — which did not occur until the court considered Lynch's verbal motion to terminate his probation on February 25, 2025. Accordingly, the trial court was permitted to make any absconding and tolling findings, but only if it retained the authority to do so. The trial court's misreading of *Rue* resulted in an incomplete analysis.

{¶ 29} Finding that the revocation proceedings were timely commenced, the trial court must then consider, under *Hemsley*, the aspect of notice. If the trial court determines that notice of the violations was properly given, satisfying the second aspect of *Hemsley*, then the court retained the authority to conduct proceedings on the alleged community-control violations, even though Lynch's stated period of community control had since expired. This is the threshold determination as stated in *Hemsley* and reaffirmed in *Rue*. Only then does the trial court have the authority to proceed to the second aspect of *Rue* — whether under R.C. 2929.15(A)(1) a tolling event occurred and the effect of that event.

{¶ 30} Based on the foregoing, we find that the trial court erred in terminating Lynch's probation based on a misapplication of *Rue* and R.C. 2929.15(A)(1). We reverse and remand the case to the trial court to conduct further proceedings consistent with this opinion.

{¶ 31} The State's first assignment of error is sustained.

**B. Should *Rue* Be Overruled?**

{¶ 32} In its second assignment of error, the State contends that *Rue* should be overruled because it was wrongly decided. It asserts that the majority in *Rue* misread and misapplied the plain language of R.C. 2929.15(A)(1).

{¶ 33} This court, as an intermediate court, is required to follow and apply Ohio Supreme Court decisions, and we have no authority to modify, much less overrule, any decision of the Ohio Supreme Court. Nevertheless, we recognize that to preserve an issue for review by the Ohio Supreme Court, a litigant must first present the issue to this court — a proposition that the State recognizes in this case. Accordingly, because we are without authority to overrule *Rue*, the second assignment of error is overruled.

{¶ 34} Judgment reversed and case remanded.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

MARY J. BOYLE, P.J., and
SEAN C. GALLAGHER, J., CONCUR