**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as**
*State ex rel. Conrath v. LaRose*, **Slip Opinion No. 2022-Ohio-3594.]**

NOTICE

This slip opinion is subject to formal revision before it is published in
an advance sheet of the Ohio Official Reports.  Readers are requested
to promptly notify the Reporter of Decisions, Supreme Court of Ohio,
65 South Front Street, Columbus, Ohio 43215, of any typographical or
other formal errors in the opinion, in order that corrections may be
made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-3594

THE STATE EX REL. CONRATH, *v.* LaROSE, SECY. OF STATE, ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it**
**may be cited as *State ex rel. Conrath v. LaRose*, Slip Opinion No.**
**2022-Ohio-3594.]**

*Elections—Mandamus—R.C. 3513.31(B)—If a person nominated in a primary*
*election as a party candidate withdraws as that candidate, the vacancy in*
*the party nomination may be filled by a district committee of the major*
*political party that made the nomination—Democratic Party's sole*
*candidate in the 2022 primary election for state representative of a House*
*district gave notice of his withdrawal after the primary election but before*
*he was certified as the winner and party nominee for the general*
*election—Withdrawing candidate's anticipated withdrawal as the certified*
*party candidate permitted the district committee's nomination process to*
*occur before certification of the primary-election result—Relator, the*
*replacement nominee, had a clear legal right to have her name placed on*
*the November 8, 2022 general-election ballot, and respondents, the Ohio*

*secretary of state and boards of elections, had a clear legal duty to place her name on the ballot—Writ granted.*

(No. 2022-1141—Submitted October 4, 2022—Decided October 11, 2022.)

IN MANDAMUS.

———————————

**Per Curiam.**

## I. INTRODUCTION

{¶ 1} "If a person nominated in a primary election as a party candidate * * * withdraws as that candidate * * *, the vacancy in the party nomination so created may be filled by a district committee of the major political party that made the nomination at the primary election." R.C. 3513.31(B). In this expedited election case, the Democratic Party's sole candidate in the 2022 primary election for state representative of Ohio House District 94 gave notice of his withdrawal from the race after the primary election but before he was certified as the winner and party nominee for the general election. A district committee then nominated relator, Tanya Conrath, to be the replacement Democratic Party candidate for the state-representative seat in the November 2022 general election.

{¶ 2} Respondent Ohio Secretary of State Frank LaRose decided that Conrath would not be certified to the ballot, and Conrath now seeks a writ of mandamus ordering her name to be placed on the ballot. For the reasons that follow, we grant the writ.

## II. FACTS AND PROCEDURAL HISTORY

{¶ 3} Rhyan Goodman ran unopposed in the 2022 Democratic primary election for the office of state representative of House District 94, which comprises all or parts of Athens, Meigs, Morgan, and Washington Counties. Athens County is the district's most populous county. Due to a federal court's unprecedented decision to order the primary election for the Ohio House and

2

Senate races to be held on a date different than that required by R.C. 3501.01(E)(1), the election was held on August 2 rather than May 3.[1]

{¶ 4} Six days after the primary election, on August 8, Goodman notified respondent Athens County Board of Elections of his "request to be removed from the ballot for the November 8th General Election." At that time, the official result of the primary election had not yet been certified. Under R.C. 3513.22(A), the result could have been certified no earlier than August 13 and no later than August 23. A Democratic district committee selected Conrath to be the party's replacement nominee on August 15, the last day it was legally permitted to do so under R.C. 3513.31(B). Conrath accepted the nomination. On August 19, the Athens County board certified that Goodman had received all the votes cast in his race.

{¶ 5} Meanwhile, on August 17, the Athens County board reached a tie vote on whether to certify Conrath to the general-election ballot. The issue was referred to Secretary LaRose for a tiebreaking vote. *See* R.C. 3501.11(X). On September 13, Secretary LaRose voted not to certify Conrath to the ballot, concluding that the district committee had lacked authority to select a replacement nominee because Goodman was not a "party candidate" as that term is used in R.C. 3513.31(B) and defined in R.C. 3501.01(K).

{¶ 6} On September 16, Conrath filed this action against Secretary LaRose, the Athens County board, and additional respondents Meigs County Board of Elections, Morgan County Board of Elections, and Washington County

---

1. *See League of Women Voters of Ohio v. Ohio Redistricting Comm.*, ___ Ohio St.3d ___, 2022-Ohio-1235, ___ N.E.3d ___, ¶ 69 ("The authority for setting the date for a primary election belongs to the General Assembly, not to the Ohio Supreme Court, the secretary of state, or a federal court. *See* R.C. 3501.40 and 3501.01(E)(1). Principles of federalism and comity cut against a *federal* court ordering the date of a primary election for purely *state* offices due to a dispute over the validity of *state* legislative maps under the *state* constitution" [emphasis sic]); *contra Gonidakis v. LaRose*, S.D.Ohio No. 2:22-cv-0773, 2022 WL 1709146 (May 27, 2022) (ordering the 2022 Ohio primary election for state legislative offices to be held on August 2).

Board of Elections, seeking a writ of mandamus ordering her name to be placed on the November 2022 general-election ballot.

### III. DISCUSSION

{¶ 7} Mandamus is the appropriate action by which to challenge the secretary of state's tiebreaking decision under these circumstances. *See* R.C. 3501.11(X); *State ex rel. Husted v. Brunner*, 123 Ohio St.3d 288, 2009-Ohio-5327, 915 N.E.2d 1215, ¶ 9; *see also State ex rel. Herman v. Klopfleisch*, 72 Ohio St.3d 581, 583, 651 N.E.2d 995 (1995). To prevail on her mandamus claim, Conrath must prove by clear and convincing evidence (1) that she has a clear legal right to have her name placed on the ballot, (2) a corresponding clear legal duty on the part of respondents to place her name on the ballot, and (3) that she lacks an adequate remedy in the ordinary course of the law. *See State ex rel. Law v. Trumbull Cty. Bd. of Elections*, 157 Ohio St.3d 280, 2019-Ohio-3724, 135 N.E.3d 762, ¶ 12. Given the proximity of the November general election, Conrath lacks an adequate remedy in the ordinary course of the law. *See State ex rel. Finkbeiner v. Lucas Cty. Bd. of Elections*, 122 Ohio St.3d 462, 2009-Ohio-3657, 912 N.E.2d 573, ¶ 18-21. In evaluating the remaining elements as applied to Secretary LaRose and the boards of elections, " 'the standard is whether they engaged in fraud, corruption, or abuse of discretion, or acted in clear disregard of applicable legal provisions.' " *See Husted* at ¶ 9, quoting *Whitman v. Hamilton Cty. Bd. of Elections*, 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, ¶ 11.

{¶ 8} Conrath has a clear legal right to have her name placed on the 2022 general-election ballot as the nominee of the Democratic Party for state representative of the 94th House district. The Athens County board's vote on whether to place Conrath's name on the ballot resulted in a tie. Pursuant to his authority under R.C. 3501.11(X), Secretary LaRose broke the tie and denied Conrath access to the ballot. In doing so, he acted in clear disregard of this court's caselaw and created an impermissible legal absurdity based on the

4

anomalous primary election held on August 2, which occurred three months after the primary-election date that was required under Ohio's statutes. *See League of Women Voters of Ohio v. Ohio Redistricting Comm.*, ___ Ohio St.3d ___, 2022-Ohio-1727, ___ N.E.3d ___, ¶ 10-22 (O'Connor, C.J., concurring).

{¶ 9} For the reasons that follow, we conclude that Secretary LaRose and two members of the Athens County Board of Elections,[2] which is the board of elections for the most populous county in the 94th House District, acted in clear disregard of their legal duties to certify Conrath's name to the November 2022 Ohio general-election ballot as the Democratic Party's nominee for state representative. We further conclude that Conrath has a clear legal right to a writ of mandamus ordering her name to be placed on the ballot.

{¶ 10} A political party's authority to select a replacement nominee to fill a candidate vacancy in an election for a multicounty-district office arises under R.C. 3513.31(B), which provides:

> *If a person nominated in a primary election as a party candidate* for election at the next general election, whose candidacy is to be submitted to the electors of a district comprised of more than one county but less than all of the counties of the state, *withdraws as that candidate* or is disqualified as that candidate under section 3513.052 of the Revised Code, *the vacancy in the party nomination so created may be filled by a district committee of the major political party that made the*

---

2. Although the Meigs, Morgan, and Washington County boards likewise have a clear legal duty to place Conrath's name on the ballot, the record does not support the conclusion that those boards have failed to carry out any legal duty at this point. While it is fair to say that all the respondents have a general duty to follow Ohio law, only Secretary LaRose and the members of the Athens County board who voted "no" have failed to honor that duty.

*nomination at the primary election*, if the committee's chairperson and secretary certify the name of the person selected to fill the vacancy by the time specified in this division, at a meeting called for that purpose.

(Emphasis added.)

{¶ 11} "[P]arty candidate" means:

[A]ny candidate who claims to be a member of a political party and who has been certified to appear on the office-type ballot at a general or special election as the nominee of a political party because the candidate has won the primary election of the candidate's party for the public office the candidate seeks, has been nominated under section 3517.012, or is selected by party committee in accordance with section 3513.31 of the Revised Code.

R.C. 3501.01(K).

{¶ 12} This statutory language gives a political party authority to select a replacement nominee if a candidate who has been certified to appear on the general-election ballot as the party's nominee withdraws. On August 8, Goodman signaled his intention not to stand for election in the November general election. He had run unopposed in the primary election, and he had not yet been "certified" as the winner of the primary by the time he withdrew. Based on this, Secretary LaRose concluded that the district committee had lacked authority to select a replacement Democratic Party nominee because Goodman had not yet been legally certified "as a party candidate for election at the next general election." *See* R.C. 3513.31(B); R.C. 3501.01(K). In short, Secretary LaRose concluded

6

that the district committee had acted prematurely because the vacancy caused by Goodman's withdrawal had not yet officially occurred.

{¶ 13} However, the deadline for a district committee to certify a replacement nominee is the "eighty-sixth day before the day of the general election." R.C. 3513.31(B). For this particular election cycle, that deadline was August 15—the same day the district committee of the Democratic Party selected Conrath to be the party's replacement nominee and the day Conrath accepted the nomination. Thus, despite Secretary LaRose's conclusion that the replacement nomination had been premature, the replacement was made as late as it legally could have been without being too late. In other words, because of the anomalous timing of this primary election due to the unprecedented intervention of the federal court in *Gonidakis v. LaRose*, S.D.Ohio No. 2:22-cv-0773, 2022 WL 1709146 (May 27, 2022), Secretary LaRose's interpretation of the relevant statutory provisions gives rise to a legal impossibility—i.e., Goodman's replacement could not be submitted until he was certified as the candidate on August 19, but the replacement also had to be submitted by the August 15 deadline. That interpretation was unnecessary, resulted in a legal absurdity, and moreover, it is contrary to our caselaw.

{¶ 14} In *State ex rel. Barth v. Hamilton Cty. Bd. of Elections*, 65 Ohio St.3d 219, 224-225, 602 N.E.2d 1130 (1992), we considered former R.C. 3513.31, Am.H.B. No. 397, 140 Ohio Laws, Part II, 3682, which contained statutory language similar to the language contained in the statute at issue here and authorized a political-party committee to select a general-election candidate for an office if the holder of the office resigned. We concluded that a major-political-party committee was permitted to select a nominee "any time before the deadline for certifying the nominee [and] * * * before a vacancy actually occurred." *Barth* at 224. In fact, we specifically considered and rejected the argument that Secretary LaRose has employed in this case. We stated:

[T]he rule that an appointment cannot be made where no vacancy exists does not prevent appointments made in anticipation of a vacancy that ultimately occurs. In *State ex rel. Norman v. Viebranz*, 19 Ohio St.3d 146, 148, 483 N.E.2d 1176 (1985), we said: "In sum, it is the law of Ohio that there can be a valid appointment to an office in advance of the time the vacancy actually occurs. Prospective appointments to office are generally deemed to be effective, with this exception: If the term of the appointing body or officer will expire prior to or at the same time the vacancy will occur, then no power of prospective appointment exists."

*Id*. at 225.

{¶ 15} Further, it is not an unusual concept in other contexts to validate a premature action once the condition precedent occurs. For example, even though a deadline to appeal a judgment is strict and sometimes jurisdictional, *see* App.R. 3(A), App.R. 5(A), and *State ex rel. Arcadia Acres v. Ohio Dept. of Job & Family Servs.*, 123 Ohio St.3d 54, 2009-Ohio-4176, 914 N.E.2d 170, ¶ 12, when a party files a premature notice of appeal of a judgment, it is not ineffective; it merely becomes effective once the judgment is final, *see* App.R. 4(C) and *State v. Craig*, 159 Ohio St.3d 398, 2020-Ohio-455, 151 N.E.3d 574, ¶ 27. In addition, we have generally made clear:

"It is the duty of the courts, if the language of a statute fairly permits or unless restrained by the clear language thereof, so to construe the statute as to avoid [an unreasonable or absurd] result."

8

> [*State ex rel. Cooper v. Savord*,] 153 Ohio St. 367, 92 N.E.2d 390
> (1950), paragraph one of the syllabus.

(First set of brackets sic.) *State ex rel. Clay v. Cuyahoga Cty. Med. Examiner's Office*, 152 Ohio St.3d 163, 2017-Ohio-8714, 94 N.E.3d 498, ¶ 24 (lead opinion). We have specifically followed this prescription in election cases in order to protect electors' opportunities to have a meaningful choice when voting. *See, e.g.*, *State ex rel. Ashbrook v. Brown*, 39 Ohio St.3d 115, 116, 529 N.E.2d 896 (1988); *State ex rel. Flex v. Gwin*, 20 Ohio St.2d 29, 31, 252 N.E.2d 289 (1969), *superseded by statute as stated in State ex rel. Ruehlmann v. Luken*, 65 Ohio St.3d 1, 598 N.E.2d 1149 (1992).

{¶ 16} Secretary LaRose and the Athens County board each had a clear legal duty to follow not only the relevant statutes, but also this court's decision in *Barth*. In fact, the secretary of state has a specific statutory duty to "[c]ompel the observance by election officers in the several counties of the requirements of the election laws," R.C. 3501.01(M), which includes caselaw from this court applying and interpreting those laws. And *Barth* makes clear that prospective nominations to run for office are generally deemed to be effective and that "the rule that an appointment cannot be made where no vacancy exists does not prevent appointments made in anticipation of a vacancy that ultimately occurs." *Id.* at 225. Reconciling the applicable statutes and this court's precedent with the extraordinary circumstances surrounding the August primary election compels the conclusion that Conrath had a clear legal right for her name to be placed on the ballot at the time of the official certification of Goodman as the primary winner and his withdrawal on August 19, as a result of the timely filed replacement certification that named her as the candidate on August 15. Respondents' clear legal duty was to follow the relevant statutes and our ruling in *Barth* and place Conrath's name on the ballot.

{¶ 17} Disagreeing with this conclusion, one of the dissents stridently accuses this majority (and not for the first time) of judicial activism, even going so far as to state that the majority has "engage[d] in a now all-too-familiar pattern of replacing what the law actually says with what the majority needs it to say to achieve the outcome it desires" and musing, "At this point, one has to wonder whether election cases are governed by the Revised Code or simply the whims of the majority." Dissenting opinion of Kennedy, J., ¶ 37; *see also League of Women Voters of Ohio v. Ohio Redistricting Comm.*, ___ Ohio St.3d ___, 2022-Ohio-789, ___ N.E.3d ___, ¶ 59, 141 (Kennedy and DeWine, JJ., dissenting); *id.* at ¶ 177 (Fischer, J., dissenting); *League of Women Voters of Ohio v. Ohio Redistricting Comm.*, ___ Ohio St.3d ___, 2022-Ohio-1235, ___ N.E.3d ___, ¶ 90-91, 99, 107 (Kennedy, J. dissenting); *id.* at ¶ 129-130 (DeWine, J. dissenting); *League of Women Voters of Ohio*, ___ Ohio St.3d ___, 2022-Ohio-1727, ___ N.E.3d ___, at ¶ 23 (Kennedy, J., dissenting). In doing so, this and the other dissent suggest that the relevant statutes are clear and unambiguous. The flaw in the dissents' arguments is that in *Barth*, this court interpreted the issue differently than the dissents do here in the context of a political party's attempt to anticipate an official's resignation and place that party's candidate on the general-election ballot. *Id.*, 65 Ohio St.3d at 219, 602 N.E.2d 1130. If we read R.C. 3513.31 one way (to allow one political party's candidate to be anticipatorily substituted) and then a different way (to prohibit Conrath, who belongs to a different political party, from being substituted), a far worse label than "activist" would come to mind. In short, it is greatly ironic that any dissent makes accusations of judicial activism while urging departure from our precedent in an effort to obtain an outcome that thwarts the plain purpose of R.C. 3513.31(B).

{¶ 18} Moreover, the dissents' assertions that R.C. 3513.31(B) is clear and unambiguous ignore the unique circumstances of this case. This year's state legislative primary election was originally scheduled for May, as required by R.C.

10

3501.01(E)(1). After this court held multiple times that the legislative-district maps drawn by the Ohio Redistricting Commission violated the Ohio Constitution, a federal court interfered and, after picking one set of maps that we had declared unconstitutional, rescheduled the primary election in violation of R.C. 3501.01(E)(1), notwithstanding the facts that the election was a *state* election for *state* officials and the conflicts regarding the maps involved questions of *state* constitutional law. *See Gonidakis*, S.D.Ohio No. 2:22-cv-0773, 2022 WL 1709146 (ordering the 2022 Ohio primary election for state legislative offices to be held on August 2); *League of Women Voters of Ohio*, ___ Ohio St.3d ___, 2022-Ohio-1235, ___ N.E.3d ___, at ¶ 69 ("The authority for setting the date for a primary election belongs to the General Assembly, not to the Ohio Supreme Court, the secretary of state, or a federal court"). The notion that R.C. 3513.31(B) should somehow be interpreted as having forecast and accounted for this unprecedented federal interference in state sovereignty is risible.

{¶ 19} Notwithstanding the extraordinary circumstances in which we are asked to apply R.C. 3513.31(B), the dissents take the position that the substitution attempt on August 15 was too early. They ignore the fact that by the time the substitution would have been proper (in the dissents' view) on August 19, it would have been too late to make a substitution under R.C. 3513.31(B). In short, the dissents ignore that R.C. 3513.31(B) exists to *enable* replacement of a nominee and that this law should not be applied or interpreted to make such replacement impossible.[3] Applying statutes consistently with precedent to serve their stated purposes is what this court strives to do at every turn.

---

3. This is reminiscent of the same dissenters' view that an anti-gerrymandering provision should not operate to prohibit gerrymandering. *See, e.g.*, *League of Women Voters of Ohio v. Ohio Redistricting Comm.*, 167 Ohio St.3d 255, 2022-Ohio-65, 192 N.E.3d 379, ¶ 189-190, 237-246 (Kennedy and DeWine, JJ., dissenting); *id.* at ¶ 280-335 (Fischer, J., dissenting).

## IV. CONCLUSION

{¶ 20} When Secretary LaRose and two members of the Athens County board voted not to certify Conrath to the ballot, they acted in clear disregard of applicable law—specifically, this Court's decision in *Barth*. Conrath has a clear legal right to have her name placed on the ballot as a result of the district committee's timely filed nomination of her and her acceptance of the nomination. By law, based on our holding in *Barth*, Goodman's anticipated withdrawal as the certified party candidate permitted the district committee's nomination process to occur before certification of the primary-election result that officially made Goodman a candidate on the general-election ballot. Respondents had a clear legal duty to follow *Barth* and place Conrath's name on the ballot. We therefore issue a writ of mandamus ordering respondents to place Tanya Conrath's name on the November 8, 2022 general-election ballot as the Democratic Party candidate for state representative of the 94th House District.

Writ granted.

O'CONNOR, C.J., and DONNELLY, STEWART, and BRUNNER, JJ., concur.

KENNEDY, J., dissents, with an opinion joined by FISCHER and DEWINE, JJ.

FISCHER, J., dissents, with an opinion.

_____

**KENNEDY, J., dissenting.**

{¶ 21} I dissent from the majority's decision. Under the plain terms of the Revised Code, relator, Tanya Conrath, is not entitled to a writ of mandamus ordering her name to be placed on the November 2022 general-election ballot. The justices in the majority once again choose to ignore the law and create their own rules for the benefit of one candidate.

{¶ 22} The introductory clause of R.C. 3513.31(B) begins with the word "if," which creates conditions precedent that follow. *See State v. Rue*, 164 Ohio

St.3d 270, 2020-Ohio-6706, 172 N.E.3d 917, ¶ 49. Under a condition precedent, if "x" happens, then "y" may occur. The requirements of the condition precedent here are two-fold: (1) a candidate must withdraw *before* a district committee of a major political party may select a replacement nominee and (2) the withdrawing candidate must have been *certified* to appear on the general-election ballot as the party's nominee. The language of R.C. 3513.31(B) is unambiguous: until both of its requirements are met, a district committee of a major political party is without authority to nominate a replacement candidate. Here, neither requirement was satisfied by August 15, 2022, when the Democratic district committee nominated Conrath to replace Rhyan Goodman as the Democratic Party candidate in the November 2022 general election for state representative of Ohio House District 94.

{¶ 23} The majority ignores the plain, unambiguous language of the conditions precedent established in R.C. 3513.31(B) and instead applies this court's holding in *State ex rel. Barth v. Hamilton Cty. Bd. of Elections*, 65 Ohio St.3d 219, 224-225, 602 N.E.2d 1130 (1992). Its reliance on *Barth* is misplaced. In *Barth*, this court addressed former R.C. 3513.31, Am.H.B. No. 397, 140 Ohio Laws, Part II, 3682, a statute governing circumstances different from those involved here, and it failed to engage in any statutory analysis. Because the majority fails to apply the plain, unambiguous language of R.C. 3513.31(B), I dissent.

## I. LAW AND ANALYSIS

### A. Standard of review

{¶ 24} The interpretation of a statute is a question of law. *Riedel v. Consol. Rail Corp.*, 125 Ohio St.3d 358, 2010-Ohio-1926, 928 N.E.2d 448, ¶ 6. "The question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact." *Slingluff v. Weaver*, 66 Ohio St. 621, 64 N.E. 574 (1902), paragraph two of the syllabus. "When the statutory language is plain

and unambiguous, and conveys a clear and definite meaning, we must rely on what the General Assembly has said." *Jones v. Action Coupling & Equip., Inc.*, 98 Ohio St.3d 330, 2003-Ohio-1099, 784 N.E.2d 1172, ¶ 12.

### B. R.C. 3513.31(B) and 3501.01(K)

{¶ 25} The authority of a district committee of a major political party to select a replacement nominee to fill a candidate that withdraws from an election for a multicounty-district office is set forth in R.C. 3513.31(B), which provides:

> *If a person nominated in a primary election as a party candidate* for election at the next general election, whose candidacy is to be submitted to the electors of a district comprised of more than one county but less than all of the counties of the state, *withdraws as that candidate* or is disqualified as that candidate under section 3513.052 of the Revised Code, *the vacancy in the party nomination so created may be filled by a district committee of the major political party that made the nomination at the primary election*, if the committee's chairperson and secretary certify the name of the person selected to fill the vacancy by the time specified in this division, at a meeting called for that purpose.

(Emphasis added.)

{¶ 26} "Party candidate" is defined as

> any candidate who claims to be a member of a political party and who *has been certified* to appear on the office-type ballot at a general or special election as the nominee of a political party because the candidate has won the primary election of the

14

candidate's party for the public office the candidate seeks, has been nominated under section 3517.012, or is selected by party committee in accordance with section 3513.31 of the Revised Code.

(Emphasis added.)  R.C. 3501.01(K).

### C. R.C. 3513.31(B) is unambiguous and establishes conditions precedent

{¶ 27} None of the parties here argue that R.C. 3513.31(B) is ambiguous. The provision begins with an introductory "if" clause.  "If" is defined as "in the event that" or "in case."  *Webster's Third New International Dictionary* 1124 (2002).  The General Assembly's use of the word "if" at the beginning of the provision indicates that the withdrawal of the "person nominated in a primary election as a party candidate," R.C. 3513.31(B), is a *precondition* for the district committee's authority to select a replacement nominee, *see Rue*, 164 Ohio St.3d 270, 2020-Ohio-6706, 172 N.E.3d 917, at ¶ 49.  This conclusion is further supported by the provision's language stating that "a vacancy * * * so *created* may be filled."  (Emphasis added.)  R.C. 3513.31(B).  The General Assembly's use of the past tense signifies that the vacancy had to have existed before the district committee could nominate a replacement candidate.  And when the definition of "party candidate" in R.C. 3501.01(K) is read in relation to R.C. 3513.31(B), it is clear that the withdrawing candidate referred to in R.C. 3513.31(B) must have been *certified* to appear on the general-election ballot as the party's nominee.

{¶ 28} Therefore, the plain, unambiguous introductory "if" clause in R.C. 3513.31(B) requires two conditions to occur before a district committee of a major political party may select a replacement nominee:  (1) the candidate must withdraw from the race and (2) the candidate must have been certified to appear on the general-election ballot as the party's nominee.  The General Assembly has

required both conditions to occur *before* a district committee may select a replacement nominee. And because the statutory language is unambiguous, " 'the court has no right to look for or impose another meaning,' " *Jasinsky v. Potts*, 153 Ohio St. 529, 534, 92 N.E.2d 809 (1950), quoting 50 American Jurisprudence, Section 225, at 205 (1936).

### D. *The district committee lacked statutory authority to nominate Conrath*

{¶ 29} Here, Goodman gave notice of his desire to withdraw as a candidate on August 8. At that time, Goodman was not the party's certified candidate. Therefore, under the plain language of R.C. 3513.31(B), the committee lacked authority to select a replacement nominee when it did. Rather, it was not until August 19, when the primary-election result was certified and Goodman could have become a party candidate, that the requirements plainly established by R.C. 3513.31(B) were met and the district committee was authorized to select a replacement nominee.

### E. *The majority's reliance on Barth is misplaced*

{¶ 30} To reach its public-policy-based decision, the majority ignores the plain, unambiguous language of R.C. 3513.31(B) and turns to this court's decision in *Barth*, 65 Ohio St.3d at 224-225, 602 N.E.2d 1130. But the majority's reliance on *Barth* is misplaced.

{¶ 31} In *Barth*, this court considered a different provision, former R.C. 3513.31, which set forth when a political-party committee could select a general-election candidate for an office when the person who held the office resigned. *Barth* at 224. Without any statutory analysis, this court held that former R.C. 3513.31 did not prevent a nomination in anticipation of a vacancy. *Barth* at 225. In reaching its decision in *Barth*, this court simply described each party's interpretation of the statutory language and determined that both readings were "reasonable." *Id.*

**{¶ 32}** There are not two reasonable readings of R.C. 3513.31(B)—just one. And when statutory language is unambiguous, we apply the language as written without adding or deleting words. *Risner v. Ohio Dept. of Natural Resources, Ohio Div. of Wildlife*, 144 Ohio St.3d 278, 2015-Ohio-3731, 42 N.E.3d 718, ¶ 12.

### F. The absurdity doctrine does not apply

**{¶ 33}** The majority further supports its decision by determining that respondent Ohio Secretary of State Frank LaRose's interpretation of R.C 3513.31(B), which applies the provision's plain, unambiguous language, results in a legal absurdity. However, the absurd-result exception to the plain-meaning rule does not apply.

**{¶ 34}** " 'The absurd-result exception to the plain-meaning rule of [statutory] construction' applies 'only [to] those cases in which the plain language of a statute results in an *obviously unintended result*.' " (Brackets and emphasis added in *Meyer*.) *State ex rel. Meyer v. Warren Cty. Bd. of Elections*, 165 Ohio St.3d 134, 2020-Ohio-4863, 176 N.E.3d 699, ¶ 14, quoting *State ex rel. Clay v. Cuyahoga Cty. Med. Examiner's Office*, 152 Ohio St.3d 163, 2017-Ohio-8714, 94 N.E.3d 498, ¶ 26 (lead opinion). This court has explained:

> Moreover, "even if the plain-language application of a statute would yield an absurd result, the absurdity doctrine does not permit a court to correct the absurdity unless it is 'reparable by changing or supplying a particular word or phrase whose inclusion or omission was obviously a technical or ministerial error * * *. The doctrine does not include substantive errors arising from a drafter's failure to appreciate the effect of certain provisions.' "

(Ellipsis added in *Parker*.) *Id.*, quoting *State v. Parker*, 157 Ohio St.3d 460, 2019-Ohio-3848, 137 N.E.3d 1151, ¶ 28 (lead opinion), quoting Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 238 (2012).

{¶ 35} The absurdity doctrine does not apply here. There is no ministerial error in R.C. 3513.31(B). Rather, the unusual circumstances here arose from Ohio's having held a primary election later in the election cycle than normal. That happened because a federal court exercising the authority granted to it under the Supremacy Clause of the United States Constitution to protect the right to vote ordered the state legislative primary election to be held on August 2. *See Gonidakis v. LaRose*, ___ F.Supp.3d ___, ___, 2022 U.S. Dist. LEXIS 72172, *7 (S.D.Ohio 2022) ("this remedy vindicates the federal right to vote"). And the General Assembly enacted legislation moving other statutory election deadlines, *see* 2022 Sub.H.B. No. 93, but for whatever reason, it chose not to modify the deadlines set forth in R.C. 3513.31(B) for candidates on the August 2 primary-election ballot. The General Assembly, as the final arbiter of public policy, has simply required that two conditions exist before a district committee of a major political party may nominate a replacement candidate.

## II. CONCLUSION

{¶ 36} The very definition of judicial activism is a majority's "embody[ing] [its] opinions in law" and advancing its policy preferences over those of the legislature. *Lochner v. New York*, 198 U.S. 45, 75-76, 25 S.Ct. 539, 49 L.Ed. 937 (1905) (Holmes, J, dissenting), *overruled by Ferguson v. Skrupa*, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963). As the United States Supreme Court has explained, judicial activism is incongruous with our duty as judges:

Our duty is to read the statute according to the natural and obvious import of the language, without resorting to subtle and

forced construction for the purpose of either limiting or extending its operation. When the language is plain, we have no right to insert words and phrases, so as to incorporate in the statute a new and distinct provision.

(Citation omitted.) *United States v. Temple*, 105 U.S. 97, 99, 26 L.Ed. 967 (1881).

{¶ 37} The majority's decision to ignore the law and impose the policy result it wants "comes at the expense of a predictable rule of law that applies equally to all." *State ex rel. Maras v. LaRose*, ___ Ohio St.3d ___, 2022-Ohio-3295, ___ N.E.3d ___, ¶ 34 (DeWine, J., dissenting). In doing so, it engages in a now all-too-familiar pattern of replacing what the law actually says with what the majority needs it to say to achieve the outcome it desires. *See, e.g.*, *id.*; *State ex rel. DeMora v. LaRose*, ___ Ohio St.3d ___, 2022-Ohio-2173, ___ N.E.3d ___; *see also Gonidakis* at ___, 2022 U.S. Dist. LEXIS 72172, at *75-76 (criticizing this court's majority for applying "a strict proportionality test" in the General Assembly–redistricting cases "that cannot easily be found in the text of Ohio's Constitution"). At this point, one has to wonder whether election cases are governed by the Revised Code or simply the whims of the majority.

{¶ 38} R.C. 3513.31(B) requires two conditions precedent to occur before a district committee of a major political party has the authority to nominate a replacement candidate. Because the district committee of a major political party here nominated a replacement candidate prior to the original candidate's being certified, the nomination is invalid. Because the majority holds otherwise, I dissent.

FISCHER and DEWINE, JJ., concur in the foregoing opinion.

_____

**FISCHER, J., dissenting.**

{¶ 39} I fully join the first dissenting opinion. I write separately to highlight additional points.

{¶ 40} As set forth in the first dissenting opinion, the analysis of the so-called per curiam opinion is puzzlingly premised on the notion that respondent Ohio Secretary of State Frank LaRose and the respondent boards of elections had a clear legal duty to follow the relevant statutes, not by applying the plain statutory language, but by *refusing* to apply the statutory language in order to avoid what the per curiam opinion terms "an impermissible legal absurdity," per curiam opinion, ¶ 8.

## I. The Extraordinary Factual Circumstances of this Case Are the Result of this Court's Previous Failure to Follow the Ohio Constitution

{¶ 41} The so-called per curiam opinion places the blame for the unusual factual circumstances in this case on "the unprecedented intervention of the federal court," per curiam opinion at ¶ 13. I cannot help but note that the unusual factual circumstances in this case are actually the direct result of this court's failure to adhere to Article XI, Section 8 of the Ohio Constitution in the General Assembly–redistricting cases that this court has decided within the past year. *See League of Women Voters of Ohio v. Ohio Redistricting Comm.*, 167 Ohio St.3d 255, 2022-Ohio-65, 192 N.E.3d 379, ¶ 280 ("*League I*") (Fischer, J., dissenting); *League of Women Voters of Ohio v. Ohio Redistricting Comm.*, ___ Ohio St.3d ___, 2022-Ohio-342, ___ N.E.3d ___, ¶ 150-152 (Fischer, J., dissenting); *League of Women Voters of Ohio v. Ohio Redistricting Comm.*, ___ Ohio St.3d ___, 2022-Ohio-789, ___ N.E.3d ___, ¶ 195 (Fischer, J., dissenting); *League of Women Voters of Ohio v. Ohio Redistricting Comm.*, ___ Ohio St.3d ___, 2022-Ohio-1235, ___ N.E.3d ___, ¶ 109 (Fischer, J., dissenting).

{¶ 42} In those cases, I emphasized that the plain language of Article XI, Section 8(C)(1)(a) precludes this court from reviewing a four-year General

Assembly–district plan adopted pursuant to the Section 8 impasse procedures. *See, e.g.*, *League I* at ¶ 314 (Fischer, J., dissenting). If this court had properly followed Article XI, Section 8(C)(1)(a), it would never have exceeded its constitutional authority in reviewing the original redistricting plan, the federal court would never have had to intervene in our state election process, and the primary election at issue in this case would never have occurred late, allowing ample time for a replacement nominee to be selected in accordance with R.C. 3513.31.

{¶ 43} To the extent that this case highlights any absurdity, it is that this court's insistence on not applying the language of the Ohio Constitution as written will ultimately result in the further desire to bend the language of the law to clean up the messes that this court has created.

## II. The Tone of the Per Curiam Opinion Falls Below the Standard Befitting Per Curiam Opinions of this Court

{¶ 44} In addition to my concerns about this court's failure to apply the Ohio Constitution and the Revised Code as written, I also have concerns about the tone of the so-called per curiam opinion, which I find to be insulting and inflammatory, beyond merely setting forth a differing view of the law (a view that I respectfully consider to be incorrect).

{¶ 45} For example, the third footnote of the per curiam opinion contains a citation to 56 paragraphs of my dissenting opinion in the first General Assembly–redistricting case as a purported example of what it says is my "view that an anti-gerrymandering provision should not operate to prohibit gerrymandering." Per curiam opinion at fn. 3. Not once—neither in that opinion nor in any other opinion I have written—have I said such a thing. My view has been consistent, as stated above: the wording of Article XI, Section 8 precludes this court from reviewing the constitutionality of a four-year plan. (Notably, no one nor any opinion has ever offered a compelling argument for why we should

judicially insert the phrase "except as provided in Section 9 of this article" into Article XI, Section 8(C)(1)(b) of the Ohio Constitution, but that is beside the point at this moment.) It is disrespectful and disingenuous for a so-called per curiam opinion of this court to "put words in my mouth" that I have never spoken or written. While the redistricting cases have highlighted disagreements within the court regarding the legal analysis in those cases, I do not believe that this calls for a per curiam opinion of the court to blatantly misrepresent a justice's opinions.

{¶ 46} As a second example, the per curiam opinion calls my refusal to graft extratextual flexibility into the language of R.C. 3513.31(B) "risible." Per curiam opinion at ¶ 18. Again, my approach to both the redistricting cases and this case has reflected my view of how judges and justices should approach their duties: apply the constitutional and statutory law of Ohio as written, resisting any urge to exceed our judicial roles by ignoring or changing that law in order to reach an outcome different from the one required by the law. This can be challenging for the judiciary, as there will inevitably be instances when we personally disagree with the way a constitutional provision or statute is written. Our duty, however, is to apply the law, not to enact or amend it. In the redistricting cases, I sought to apply Article XI, Section 8 as written, just as I seek to apply R.C. 3513.31(B) as written in this case. While the per curiam opinion may employ a different analysis, this court would better serve the people of Ohio if the per curiam opinion were able to employ that analysis respectfully. Disagreements regarding legal analysis—this court's primary duty—should not be flippantly treated as a laughing matter. I—and I am sure all Ohioans—expect a more judicious and judicial tone from this court's per curiam opinions.

{¶ 47} Finally, the so-called per curiam opinion, signed on by four of my colleagues, fails to follow or meet at least seven of the aspirations of the Judicial Creed of professionalism. *See* Supreme Court of Ohio Commission on Professionalism, *Professional Ideals for Ohio Lawyers and Judges*, A Judicial

22

Creed, at 9, available at https://www.supremecourt.ohio.gov/docs/Publications /AttySvcs/proIdeals.pdf (accessed Oct. 11, 2022) **[perma.cc/A7BF-CQVK].** We as a court ask all judicial officers in Ohio to strive to follow this creed; however, those joining the per curiam opinion above seem to ignore certain of its principles, including:

> I RECOGNIZE my role as a guardian of our system of jurisprudence dedicated to equal justice under law for all persons.
>
> I BELIEVE that my role requires scholarship, diligence, personal integrity and a dedication to the attainment of justice.
>
> I KNOW that I must not only be fair but also give the appearance of being fair.
>
> I RECOGNIZE that the dignity of my office requires the highest level of judicial demeanor.
>
> I WILL treat all persons, including litigants, lawyers, witnesses, jurors, judicial colleagues and court staff with dignity and courtesy and insist that others do likewise.
>
> I WILL strive to conduct my judicial responsibilities and obligations in a timely manner and will be respectful of others' time and schedules.
>
> I WILL aspire every day to make the court I serve a model of justice and truth.

(Capitalization sic.)

{¶ 48} If members of the public reading this opinion had any knowledge of what has occurred regarding this decision in the last hours before the decision's release, they would understand how much the wording and timing of the so-called per curiam opinion fail to meet those aspirations.

### III. Conclusion

{¶ 49} R.C. 3513.31 plainly bars respondents from placing relator Tanya Conrath's name on the November 8, 2022 general-election ballot as the Democratic Party candidate for state representative of the 94th Ohio House District. The statute's language creates hard deadlines, and it grants neither respondents nor this court the discretion to ignore those deadlines, even in extraordinary circumstances. Respondents did not act in clear disregard of the law by following the law. For these reasons, I respectfully dissent.

{¶ 50} I also note the lack of professionalism and professional courtesy of the authors of the so-called per curiam opinion today.

––––––––––––––––––

McTigue & Colombo, L.L.C., Donald J. McTigue, and J. Corey Colombo, for relator.

Dave Yost, Attorney General, and Julie M. Pfeiffer, Assistant Attorney General; and Dickinson Wright, P.L.L.C., David A. Lockshaw Jr., Terrence O'Donnell, and Manuel D. Cardona, for respondent Secretary of State Frank LaRose.

James K. Stanley, Meigs County Prosecuting Attorney, for respondent Meigs County Board of Elections.

Nicole T. Coil, Washington County Prosecuting Attorney, for respondent Washington County Board of Elections.

––––––––––––––––––