**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Hildreth v. LaRose*, Slip Opinion No. 2023-Ohio-3667.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-Ohio-3667

THE STATE EX REL. HILDRETH ET AL. *v.* LAROSE, SECY OF STATE, ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Hildreth v. LaRose*, Slip Opinion No. 2023-Ohio-3667.]**

*Elections—Mandamus—Petitioners failed to file an initiative petition in compliance with R.C. 731.28 by replacing first page of part-petitions after obtaining signatures—Petition as filed does not comply with R.C. 731.31, because each filed part-petition includes a title that was not presented to electors who signed it—Secretary of state and county board of elections abused their discretion and disregarded the law in overruling relators' protest—Writ sustaining relators' protest and removing initiative from general-election ballot granted.*

(No. 2023-1213—Submitted October 6, 2023—Decided October 8, 2023.)

IN MANDAMUS.

———————————

**Per Curiam.**

{¶ 1} In this expedited election case, relators, Marshall L. Blair Hildreth, Christopher N. Hildreth Blair, Sarah B. Lewis, Victoria Maddox, and Katelyn

Roby, seek a writ of mandamus compelling respondents, Ohio Secretary of State Frank LaRose and the Logan County Board of Elections, to sustain a protest and remove an initiative from the November 2023 general-election ballot. We grant the writ.

## Background

{¶ 2}    Relators allege that in December 2022, a "drag queen dressed as an elf" participated in a Christmas parade on Main Street in the city of Bellefontaine. In April 2023, a group of Bellefontaine residents started the process for proposing an ordinance regarding "drag artist(s) and drag shows." Under R.C. 731.32, the first step in the initiative-petition process was for the proponents to file a certified copy of the proposed ordinance with Bellefontaine's city auditor. One of the proponents, Danielle Stefaniszyn, filed the following document with the city auditor in April 2023:

or signs when not a legal voter is liable to prosecution.

To the ___City Auditor___ of the ___City___ of
(City Auditor, Village Clerk or Township Fiscal Officer)        (City, Village or Township)
___Bellefontaine___ , Ohio:
(Name of City, Village or Township)

We, the undersigned, electors of the ___City___ of ___Bellefontaine___ ,
(City, Village or Township)        (Name of City, Village or Township)
Ohio respectfully propose to the electors of such city, village or township for their approval or rejection at
the general election to be held on the ___7th___ day of November, ___2023___ the following
Ordinance:

The following is a full and correct copy of the title and text of the proposed Ordinance:

> The classification of drag artist(s) and drag shows as Adult Cabaret Performance. Adult oriented exhibitions featuring male or female impersonators who provide displays and entertainment appealing to sexual interests, shall not permit the attendance of a minor.
>
> Adult Cabaret Performances shall not be held on public property, or any location viewable by a minor.

received
4-14-23

{¶ 3} To qualify the initiative for the ballot, the proponents needed to circulate a petition and obtain valid signatures from at least 10 percent of the number of Bellefontaine electors who voted for governor at the most recent general gubernatorial election. *See* R.C. 731.28. Stefaniszyn, Devin Palmer, Skate Buchanan, Charles Palmer, Renee Price, and Julia Cook (collectively,

"petitioners") began collecting signatures for the initiative petition in April 2023. On April 14, one of the relators took this picture of one of the part-petitions that was being circulated for signatures:

{¶ 4} By July 2023, petitioners had obtained signatures on 27 part-petitions. R.C. 731.28 required petitioners to file the signed petition with the city auditor. On July 26, petitioners filed a signed petition, consisting of 27 part-

petitions, with the city auditor. It is undisputed that the filed part-petitions differed from the circulated part-petitions. Before filing the petition, petitioners replaced the first page of each part-petition with a new first page that added language indicating that the proposed ordinance would amend Bellefontaine Codified Ordinance 1177.02. This is the first page of one of the filed part-petitions:



Form No. 6-I Prescribed by Ohio Secretary of State (09-17)

**Initiative Petition**
**Municipality or Home Rule Township**

R.C. 504.14, 731.28–41, 3501.38, 3503.06

NOTE: Prior to circulation of an initiative petition proposing an ordinance or measure, a certified copy of such ordinance or measure must be filed with the City Auditor, Village Clerk or Township Fiscal Officer (home rule township). This petition must be signed by ten percent of the number of electors in the city, village or unincorporated area of the township who voted for governor at the preceding gubernatorial election and must be filed with the City Auditor, Village Clerk or Township Fiscal Officer.

(NOTE –The below notice must be printed in red.)

NOTICE – Whoever knowingly signs this petition more than once, signs a name other than his own, or signs when not a legal voter is liable to prosecution.

To the _____City Auditor_____ of the _____City_____ of
 (City Auditor, Village Clerk or Township Fiscal Officer)    (City, Village or Township)

_____Bellefontaine_____, Ohio:
(Name of City, Village or Township)

We, the undersigned, electors of the _____City_____ of _____Bellefontaine_____,
 (City, Village or Township)    (Name of City, Village or Township)

Ohio respectfully propose to the electors of such city, village or township for their approval or rejection at the general election to be held on the ___7th___ day of November, ___2023___ the following Ordinance:

The following is a full and correct copy of the title and text of the proposed Ordinance:

Proposal to amend City of Bellefontaine Codified Ordinance Chapter 1177 Adult Entertainment – 1177.02 Definition

by adding the following text

*The classification of drag artist(s) and drag shows as Adult Cabaret Performance. Adult oriented exhibitions featuring male or female impersonators who provide displays and entertainment appealing to sexual interest, shall not permit the attendance of a minor. Adult Cabaret Performances shall not be held on public property, or any location viewable by a minor.*

{¶ 5} On August 4, the city auditor forwarded the petition to the board of elections, which found that the petition contained a sufficient number of valid signatures.

{¶ 6} On August 25, relators filed a protest with the board of elections, alleging that the part-petitions filed with the city auditor differed "substantively" from the ones that were circulated for signatures. Relators argued in the protest that the board was required to invalidate the petition and remove it from the ballot. After a hearing on September 7, two board members voted to sustain the protest and two members voted to overrule it. The board submitted the matter to Secretary LaRose for a tiebreaking vote. *See* R.C. 3501.11(X).

{¶ 7} On September 19, Secretary LaRose voted against the protest. The secretary concluded that "the only relevant issue [was] whether the circulated part-petitions contained the full and complete title of the proposed ordinance" and that the circulated part-petitions "**did** contain the full and correct copy of the title of the proposed ordinance, specifically: 'The classification of drag artist(s) and drag shows as Adult Cabaret Performance.' " (Boldface sic.) The secretary stated that the words added to the filed part-petitions "are not the title of the proposed ordinance; rather, they are headings that explain what the proposed ordinance would do should it pass."

{¶ 8} Relators filed this mandamus action on September 21, seeking to compel respondents to sustain their protest. On September 28, this court granted petitioners' motion to intervene as respondents. __ Ohio St.3d __, 2023-Ohio-3463, __ N.E.3d __.

## Analysis

### *Laches*

{¶ 9} The board of elections argues that relators' claim should be denied under the doctrine of laches. We decline to consider this argument because the board

waived its right to assert laches by failing to raise that affirmative defense in its answer to the complaint. *See* Civ.R. 8(C).

*Mandamus*

**{¶ 10}** To be entitled to a writ of mandamus, relators must prove by clear and convincing evidence (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of respondents to provide that relief, and (3) the lack of an adequate remedy in the ordinary course of the law. *See State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6. Given the proximity of the November election, relators lack an adequate remedy in the ordinary course of the law. *See State ex rel. Conrath v. LaRose*, 170 Ohio St.3d 222, 2022-Ohio-3594, 210 N.E.3d 504, ¶ 7. To satisfy the first two requirements, relators must show that respondents engaged in fraud or corruption, abused their discretion, or acted in clear disregard of applicable legal provisions. *See id.*

**{¶ 11}** Relators' main argument is that the petition must be invalidated because petitioners replaced the first page of the part-petitions, adding language to the petition after the signatures were collected. They first argue that petitioners' conduct violated R.C. 3501.38(I)(1), which provides that "[n]o alterations, corrections, or additions may be made to a petition after it is filed in a public office." This argument lacks merit. Petitioners did not file *the petition* with the city auditor in April 2023; under R.C. 731.32, they filed "a certified copy of the proposed ordinance." The petition was filed on July 26, and there is no evidence that anyone altered it after it was filed.

**{¶ 12}** Relators also argue that the petition did not comply with R.C. 731.28 and 731.31. R.C. 731.28 prescribes a city auditor's duties after receiving a petition that has been "signed by the required number of electors." R.C. 731.31 requires each part-petition presented to electors to "contain a full and correct copy of the title and text of the proposed ordinance." We hold that the petition did not comply with R.C. 731.28 or 731.31.

{¶ 13} As an initial matter, we note that Secretary LaRose misconstrued relators' protest in making his tiebreaking vote. Although relators' protest focused on the fact that petitioners altered the part-petitions before filing the petition with the city auditor, Secretary LaRose analyzed the protest as if "the only relevant issue [was] whether the circulated part-petitions contained the full and complete title of the proposed ordinance." In this case, Secretary LaRose continues to suggest that the only issue that must be decided is whether the part-petitions included a title, even though relators' argument focuses on the fact that petitioners altered the part-petitions. As discussed below, whether the new language constitutes a title is relevant, because the determination of that issue will inform whether the filed petition complied with R.C. 731.31. But the issue is not whether the *circulated* part-petitions contained a title. The ultimate issue is whether petitioners' alteration of the part-petitions invalidates the petition.

{¶ 14} We hold that petitioners, by replacing the first page of the part-petitions after obtaining signatures, failed to file a petition in compliance with R.C. 731.28. Although R.C. 731.28 does not expressly prohibit the proponents of an initiative petition from altering the first page of each part-petition, by referring to a petition "signed by the required number of electors," the statute inherently requires that the part-petitions that electors sign are the same ones that are later filed with the city auditor. Indeed, the first pages of the filed part-petitions specify that "[t]his petition" must be signed by electors, and they state that "the undersigned" electors are proposing the title and text of the proposed ordinance. The part-petitions as filed with the city auditor contravene R.C. 731.28 because they were not signed by any electors.

{¶ 15} The filed petition also did not comply with R.C. 731.31. The first two sentences of R.C. 731.31 provide:

Any initiative or referendum petition *may be presented in separate parts, but each part of any initiative petition shall contain a full and correct copy of the title and text of the proposed ordinance* or other measure, and each part of any referendum petition shall contain the number and a full and correct copy of the title of the ordinance or other measure sought to be referred. *Each signer of any such petition* must be an elector of the municipal corporation in which the election, upon the ordinance or measure proposed by such initiative petition, or the ordinance or measure referred to by such referendum petition, is to be held.

(Emphasis added.) The second sentence, by referring to "[e]ach signer of any such petition," makes clear that R.C. 731.31 prescribes how a petition must be presented to the electors who sign it. *See Black's Law Dictionary* 1732 (11th Ed.2019) (defining "such" as "[o]f this or that kind" and "[t]hat or those; having just been mentioned"). R.C. 731.31 thus requires the title of a proposed ordinance to be included on each part-petition presented to electors.

{¶ 16} The language added to the part-petitions in July specifies that the proposed ordinance would amend Bellefontaine Codified Ordinance 1177.02. As shown above, that language is printed inside a box that is preceded by the prefatory statement, "The following is a full and correct copy of the *title* and text of the proposed Ordinance." (Emphasis added.) The petition introduces the new language as a title, and we conclude that it is one.

{¶ 17} There is no question that the title of a proposed ordinance is material to a petition. A title "provides notice of the proposal to signers of an initiative petition. More so than the text, the title immediately alerts signers to the nature of [the] proposed legislation." *State ex rel. Esch v. Lake Cty. Bd. of Elections*, 61 Ohio St.3d 595, 597, 575 N.E.2d 835 (1991). Secretary LaRose recognized the

significance of the information conveyed by the new language when explaining his tiebreaking vote. He said that the new language "explain[s] what the proposed ordinance would do should it pass." The petition as filed does not comply with R.C. 731.31, because each filed part-petition includes a title that was not presented to the electors who signed it.

{¶ 18} Secretary LaRose argues that the new language cannot be a title because the proposed ordinance that appeared on the circulated part-petitions *already had* a title. According to Secretary LaRose, the first line of the originally proposed ordinance—"The classification of drag artist(s) and drag shows as Adult Cabaret Performance"—was the title. The secretary emphasizes that this language has the quality of a title because it is a sentence fragment that, standing alone, does not define any terms or regulate conduct. He also points out that unlike with referendum petitions, R.C. 731.31 does not require initiative-petition titles to include "the number and a full and correct copy of the title" of the ordinance. As discussed above, however, these arguments mistake what is at issue. The issue here is not whether the initiative petition would have been defective *without* the new language; it is whether the petitioners' *inclusion* of the language after signatures had been collected invalidates the petition. Even if we were to accept Secretary LaRose's conclusion that the proposed ordinance already had a title, that fact would not obviate the problem created by petitioners' alteration of the part-petitions and their addition of another title.

{¶ 19} Secretary LaRose tries to downplay the significance of the new language, arguing that it is merely a "header" and that its inclusion is a "technical defect" in the petition. We reject these arguments.

{¶ 20} To start, there is no statutory basis for calling the new language a *header*. The relevant statutes do not use that term. As noted above, the petition itself introduces the new language as a *title*. Moreover, as discussed above, the new language conveys material information about the nature of the proposed

ordinance—namely, that it would amend Bellefontaine Codified Ordinance 1177.02. Secretary LaRose suggests that the belated inclusion of that information is at most a "technical defect," pointing to testimony at the hearing indicating that circulators presented a copy of Bellefontaine City Ordinance Chapter 1177 to every person who signed the petition. But that testimony serves only to underscore the materiality of the information conveyed by the new language. The evidence shows that petitioners themselves understood the importance of communicating how the proposed ordinance would change the city's existing law. By altering the part-petitions and adding substantive language after signatures were collected, petitioners failed to comply with R.C. 731.28 and 731.31.

{¶ 21} As a final matter, Secretary LaRose argues that we should deny the requested writ of mandamus because statutes governing the people's initiative power should be "liberally construed" to permit the exercise of that power. *See State ex rel. Hodges v. Taft*, 64 Ohio St.3d 1, 5, 591 N.E.2d 1186 (1992). But the secretary has not shown that the relevant statutes are ambiguous. We lack authority to look beyond plain statutory meaning "under the guise of * * * liberal construction." *Morgan v. Adult Parole Auth.*, 68 Ohio St.3d 344, 347, 626 N.E.2d 939 (1994).

{¶ 22} Secretary LaRose also asserts that we cannot substitute our judgment for his and that we must defer to his interpretation and application of the relevant election statutes. However, we recently clarified that the judiciary is never required to defer to an administrative interpretation of the law. *TWISM Ents., L.L.C. v. State Bd. of Registration for Professional Engineers & Surveyors*, __ Ohio St.3d __, 2022-Ohio-4677, __ N.E.3d __, ¶ 3; *see also State ex rel. Ferrara v. Trumbull Cty. Bd. of Elections*, 166 Ohio St.3d 64, 2021-Ohio-3156, 182 N.E.3d 1142, ¶ 21 ("only the judiciary has ultimate authority to interpret the law").

**Conclusion**

**{¶ 23}** Secretary LaRose and the board of elections abused their discretion and disregarded the law in overruling relators' protest. Accordingly, we grant the requested writ of mandamus.

Writ granted.

KENNEDY, C.J., and FISCHER, DEWINE, DONNELLY, STEWART, BRUNNER, and DETERS, JJ., concur.

————————————

The Steinhelfer Firm, L.L.C., and Tim Steinhelfer, for relators.

Dave Yost, Attorney General, Erik J. Clark, Deputy Attorney General, and Amanda L. Narog, Assistant Attorney General, for respondent Secretary of State Frank LaRose.

Eric C. Stewart, Logan County Prosecuting Attorney, and Breanne N. Parcels, Assistant Prosecuting Attorney, for respondent Logan County Board of Elections.

The Law Office of Josh Brown, L.L.C., and Joshua J. Brown, for intervening respondents.

————————————